## DOLPHUS FARMER ET AL. *v.* ROBERT G. JAMIESON ET AL.

[No. 729, September Term, 1975.]

*Decided March 31, 1976.*

38

The cause was argued before THOMPSON, DAVIDSON and MOORE, JJ.

*Thomas L. Hennessey* for appellants.

*Cypert O. Whitfill* for appellees.

THOMPSON, J., delivered the opinion of the Court.

The appellees, Robert G. Jamieson, et al., landowners, filed a bill of complaint for injunctive relief in the Circuit Court for Harford County against the Harford County Council to declare a motion passed by the council deleting appellees' property from the county's Master Water and Sewerage Plan invalid so they could proceed with plans to construct a trailer park. The appellants, landowners in the immediate area, were permitted to intervene. The court ordered appellees' property be shown as an "Immediate Priority Service Area" and the sewage treatment plant designated for appellees' property be shown as an "Immediate Priority Facility" on the current Master Water and Sewerage Plan for Harford County. The intervenors appealed; Harford County did not appeal.

In 1970 John W. and Clara Wilson, then owners of the subject property, began formulating plans to construct a mobile home park. Because the property is located in a portion of Harford County which is not serviced by the county's central sewer system, they applied on February 6, 1970, to the State Department of Health and Mental Hygiene for a permit to develop a central waste water treatment facility to serve the proposed mobile home park. The department advised Harford County officials that the county should determine whether they wished the subject property to be used for a trailer park before the department made a decision.

On April 16, 1971, the Board of Appeals of Harford County approved the Wilsons' application for a zoning certificate for a 305 unit mobile home park subject to several conditions, including:

> "3) The sewage effluent point of discharge is to be at or below the confluence of James Run and Broad Run as recommended by the Planner's Report and subject to Health Department approval.
>
> "4) All regulations and requirements of the Health Department are to be complied with. . . ."

The Health Department was then informed of the Board of Appeals' decision.

On November 2, 1971, the Health Department approved the Wilsons' February 6, 1970 application which placed the point of discharge on James Run approximately 6 miles above the confluence of James Run and Broad Run. Other requirements were placed on the approval including that "the plant is to be operated and maintained by the Harford County Metropolitan Commission." Permits were to be issued after approval by the county commissioners of revisions to the Master Water and Sewerage Plan placing the subject property in the "immediate priority" category. After this was done the Health Department approved the Master Plan as revised.

On November 22, 1971, the Wilsons entered into a Public Works Agreement with the Harford County Metropolitan Commission and with the County Commissioners of Harford County.[1] By the terms of this agreement the Wilsons took full financial responsibility to build each phase of the sewage treatment plant in accordance with the dictates of the Health Department. Upon completion of each phase of the plant they would deed to the commission, at no cost to them, full ownership of the portion just completed. The

---

1. On November 7, 1972 Harford County voters approved the Charter form of government, thus abolishing the County Commissioners and establishing the County Council.

commission was to have the responsibility of operating the plant with the Wilsons to reimburse them for any costs incurred. If in the future the Health Department required additions or corrections to the plant in order to improve the quality of the plant effluent, the Wilsons would be financially responsible for these changes. The developer had two years after the execution of the agreement in which to record a final subdivision or development plat for this parcel and one year thereafter to commence construction. If he failed to meet the conditions or if after having started construction, more than one year lapsed without any construction taking place, then the commission could upon ninety (90) days written notice to him, terminate its obligations under the agreement.

Having taken these steps in furtherance of the construction of the trailer park, the Wilsons then conveyed the subject property to The Saunders Harwood Corporation by deed dated February 29, 1972. On June 1, 1972, the Wilsons assigned the Public Works Agreement to The Saunders Harwood Corporation. Saunders M. Almond, Jr., president of The Saunders Harwood Corporation and one of the appellees, inquired to T. Leo Sullivan, Chairman of the Board of Appeals, as to the significance of the condition in the board's decision requiring the point of discharge to be located at the confluence of James Run and Broad Run. He was informed that it made no difference to the chairman where the point of discharge was located as long as it was approved by the State Department of Health and Mental Hygiene. Under the belief that this condition could be waived, or that the Health Department's decision con-stituted a compliance with the zoning condition, and that there was no need for the added expense of placing the discharge point at the confluence of James Run and Broad Run, he took no further action in regard to meeting or changing that condition of the board's approval.

The Saunders Harwood Corporation conveyed the subject property to the appellees by a deed dated March 23, 1973. A confirmatory assignment of the Public Works Agreement was made the day of the trial from Saunders to the

appellees. At the time they took title to the subject property, the appellees entered into a contract; thereafter expending $160,728.00 for construction.

Subsequently, on April 10, 1973, the Harford County Council approved the Master Water and Sewerage Plan which included the appellees' property in a priority status. On June 12, 1973, however, the County Council voted to delete the subject property from the Master Plan. At that meeting, W. McLean Bingley from the Health Department testified that his department would inspect the plant approximately once a month, but it was the duty of the Harford County Public Works to maintain and operate the plant. He further advised that the council should consider whether that department had the manpower to fulfill this obligation in determining whether or not to delete the subject property from the Master Plan. The county attorney testified that the Public Works Agreement was legally binding. The vote was six to one to delete the subject property from the Master Water and Sewerage Plan. The effect of this vote was to force a halt to the construction of the trailer park, since the appellees could no longer obtain additional permits or approvals from the Health Department.

Appellants present three contentions.

I.   The Circuit Court for Harford County cannot compel the County Council and Harford County to expend funds for sewage treatment plant or designate a sewage treatment plant where same has been deleted from the Master Plan and there is no showing of arbitrary, capricious or fraudulent conduct.

The appellants' first argument is that the lower court could not compel the county to expend funds for a sewage treatment plant or designate a sewage treatment plant where it has been deleted from the Master Plan unless the decision of the council was found to be arbitrary, capricious, or fraudulent. As pointed out by the appellees, the order of the court does not compel the expenditure of any county

funds. The Public Works Agreement specifically states that the developer had total financial responsibility for the construction of the plant and was required to pay a sewage treatment plant operation and maintenance charge equal to the cost of maintaining and operating the plant. The financial ability of the developer is not questioned.

The trial court, in effect, found the action of the County Council of Harford County was arbitrary in amending its Master Plan on June 12, 1973, after having approved it on April 10, 1973, without any change in circumstances, in violation of a prior contract with the developer who had expended $160,728.00 for construction in reliance on the contract. We agree.

The trial judge relied on, by analogy, three Maryland cases:

> "In the case of *Board of County Commissioners of Harford County v. L. S. MacPhail*, 214 Md. 192 (1957), MacPhail brought an action to compel Harford County to build a road as the Board of County Commissioners had previously agreed. The Commissioners defended on the grounds that the action sought to compel them to exercise their discretion, but the trial court held, and the Court of Appeals agreed '. . . generally a court will not interfere with the discretion of public officials and, so, ordinarily will not tell the County Commissioners what roads to select for improvement or how improvements should be made . . .' . However, the Court then noted: 'the Commissioners exercised their discretion by agreeing to improve the road under consideration . . . . The purpose of this proceeding, therefore, is not to interfere with the County Commissioners in the exercise of their discretion, but to require them to perform and carry out any agreement which they made in the exercise of their discretion'."

> "In *District Land Corporation v. Washington Suburban Sanitary Commission*, 266 Md. 301

(1972), an apartment developer had purchased land in Prince George's County and took the necessary steps to obtain required governmental approvals. After securing zoning and plan approval, the developer executed an agreement with the Washington Suburban Sanitary Commission to have sewer and water service for the apartments. Thereafter the County Council passed a resolution that sewer service in the County was only to be provided where a development followed a duly adopted Master Plan, thereby blocking the project. The Court held that the developer had acquired a vested right to proceed with the project since the water and sewer had already been constructed and the developer had complied with all laws, rules, regulations and conditions imposed under the law as it existed when the applications were made. Thus, the discretion of the County was limited when the developer followed the law as it was enacted such that they could not block construction by further exercise of discretion."

"In *Rockville Fuel v. Gaithersburg*, 266 Md. 117 (1972), The Court of Appeals, in discussing vested rights with regard to zoning affairs, cited, with approval, from 2 Rathkopf, *The Law of Zoning and Planning* (3rd Ed.) Chapter 57, Section 3, at 57-6 to 57-7 as follows:

'The Majority Rule — may be stated as follows: A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue to use despite a restriction contained in an ordinance where, prior to the effective date of the ordinance, in reliance upon a permit theretofore validly issued, he has, in good faith, made a substantial change of position in relation to the land, made substantial expenditures or has incurred substantial

44

obligations.- - -'. See also *Richmond Corp. v. Bd. of Co. Comm'rs.*, 254 Md. 244 (1969)."

With all the facts concerning the mobile home park squarely before them, the Harford County Metropolitan Commission and the County Commissioners of Harford County signed the contract for the construction of the water and sewage treatment plant, pursuant to the express power granted to them under § 436 of the *Code of Public Local Laws of Harford County* (1965 Ed., 1971 Supp.). At the time of the signing of the contract both parties realized that construction of the sewage treatment plant depended on an "immediate priority" status of the Master Water and Sewerage Plan. Both the county commissioners and the Health Department approved the Master Plan giving the subject property "immediate priority" status shortly after the contract was executed. These were valid actions on the part of the municipal corporation, in that sufficient steps were taken to insure that the operation of the sewage treatment plant would be in accordance with the health and safety standards of the community. The agreement thus became a binding and enforceable contract, at least after the developer spent substantial sums in reliance thereon. See 11 McQuillin on Municipal Corporations, § 31.13 (3d. ed.); *Mayor and City Council of Baltimore v. Crane*, 277 Md. 198, 352 A. 2d 786 (1976). *Williamsport v. Washington County Sanitary District*, 247 Md. 326, 231 A. 2d 40 (1967); *City of Rockville v. Brookeville Turnpike Const. Co.*, 246 Md. 117, 228 A. 2d 263 (1967).

While the county council has the power to amend the Master Plan they cannot arbitrarily impair contract rights. A contract which ties the hands of the council in the valid exercise of their police power, is invalid and will not be upheld, *Baylis v. City of Baltimore*, 219 Md. 164, 148 A. 2d 429 (1959), but this is not the case here. This contract insured the Harford County community that the sewage treatment plant would meet Health Department regulations with total financial responsibility on the developer. The hindrance by one contracting party which impedes or

prevents performance by the other constitutes a breach. *Funger v. Mayor of Somerset*, 249 Md. 311, 330, 239 A. 2d 748 (1968).

A suit for specific performance or for an injunction, based upon a municipal contract may be prosecuted where the legal remedies are inadequate, or where other grounds for equitable relief are alleged. 10 McQuillin on Municipal Corporations, § 29.128 (3d. ed.); *Cohen v. Baltimore County*, 229 Md. 519, 185 A. 2d 185 (1962); *City of Bowie v. Area Development Corp.*, 261 Md. 446, 276 A. 2d 90 (1971) and *Board of County Commissioners of Harford County v. MacPhail, supra.* In this case the appellees have purchased the subject property in reliance on their being permitted to build the sewage treatment plant. Without that plant their intention to build the mobile home park would be frustrated. Large sums of money have been spent by the appellees to purchase the property and begin construction because of the justified belief that they would be allowed to construct the treatment plant within the terms of the contract. The appropriate relief under these facts is the injunctive relief granted by the trial judge. *Charles Co. Broadcasting v. Meares*, 270 Md. 321, 311 A. 2d 27 (1973).

II. Final zoning subject to a contingency cannot be amended by a collateral action of the Circuit Court for Harford County after all time for administrative appeal has expired.

Under this heading appellants argue that the effect of the injunction is to amend the zoning condition which was imposed by the Board of Appeals. We do not see it that way. The only question before us is the validity of the action of the county council in removing the subject property from its priority status in the Master Plan. Whether the point of discharge for the sewage plant is eventually located on the east branch of the James Run or at the conflux of the James Run and Broad Run is not before us. We do note that the zoning condition was specifically made subject to Health Department approval.

III. The action contained in the injunctive order is

not permissible for the benefit of the petitioners in equity who have acted in bad faith.

The appellants alleged the Wilsons showed bad faith by securing an agreement with the Harford County Metropolitan Commission and the County Commissioners of Harford County which did not comply with the conditions as to location of the outfall as required by the Board of Appeals. This argument was quite adequately answered by the trial judge:

> "It does not appear that Defendants have established that any false representation has been made. The evidence reveals that a staff report prepared for the Metropolitan Commission relative to the Public Works Agreement had a copy of the Board of Appeals decision attached which clearly shows the third condition imposed concerning the point of discharge. The agreement itself is drafted broadly enough to include both points of discharge and includes provisions for the County to assist in acquiring any necessary rights of way to fulfill the agreement. In view of the information available to the Commission, this Court cannot find that any false statements of fact were made by the Wilsons."

In addition, appellants argue here that appellees have shown bad faith in not applying to the Health Department for approval of the location of the plant outfall in accordance with the zoning condition. Assuming without deciding, that the zoning condition necessarily required that the outfall be located at the conflux of the James Run and Broad Run we do not see bad faith. There would have been time to work out the problems with the Health Department and the Board of Appeals had the county council not amended the Master Plan, thus precluding further action.

## IV. Motion to Dismiss

The appellees have incorporated in their brief a motion to dismiss the appeal on the ground that the appellants failed

to print a record extract which complies with the provisions of Rule 1028 b 1. The appellees state that the failure on the part of the appellants to comply with this rule has necessitated the filing of an 85 page appendix with the appellees' brief. No other prejudice is alleged.

Rule 1035 b 5 provides that "[o]n motion filed by any party, an appeal may be dismissed . . . [because] [t]he contents of the printed record extract do not comply with section b. of Rule 1028." Rule 1028 b 1 requires the extract contain such parts of the record as may reasonably be necessary to determine the questions presented.

The appellants' contentions concern the power and propriety of the lower court's decision to overturn the decision of the county council. In their record extract the appellants included the opinion and order of the court, the bill of complaint, the public works agreement, four letters, and the testimony of Saunders M. Almond, Jr. These are not sufficient for us to make a determination of appellants' contentions. The appellees have included the omitted parts of the record in the appendix to their brief. As the appellees have elected to supply in their appendix the material omitted, the omissions on the part of the appellants were not a deliberate attempt to mislead the Court or violate the rule, and the appellees do not appear to have been prejudiced, we deny the motion and impose the cost of printing the excess material on appellants regardless of the outcome of the case. *See Williams v. Johnson,* 261 Md. 463, 276 A. 2d 95 (1971); *Bornstein v. State Tax Commission,* 227 Md. 331, 176 A. 2d 859 (1962) which interpret the rules applicable to the Court of Appeals in a similar fashion.

> *Motion to dismiss appeal denied.*
> *Decree affirmed.*
> *Appellants to pay the costs.*