CHARLIE EDWARD HARRIS, Personal
Representative of the Estate
of Jimmy Brinkley et al. *v.*
MONICA C. BRINKLEY

[No. 52, September Term, 1976.]

*Decided November 4, 1976.*

The cause was argued before THOMPSON, MENCHINE and MELVIN, JJ.

*Myles R. Eisenstein* for appellants.

*Gilbert H. Robinette,* with whom were *Kenneth L. Rosen* and *Barry J. Dalnekoff* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On February 11, 1976, the Orphans' Court of Baltimore City found that the appellee, Monica C. Brinkley (Monica), is the posthumous illegitimate child of Jimmy Brinkley. Charlie Edward Harris, personal representative of the estate, Jack Allison Brinkley and Elizabeth Harris Brinkley, parents of the deceased, have appealed. In the language of the appellants the issues are as follows:

"1. Did the Trial Court err in permitting Georgianna Hamlin to answer questions over timely objection, in accordance with the Dead Man's Statute, Courts and Judicial Proceedings Article, Section 9-116 and Lord Mansfield's Rule, questions concerning transactions had with or statements made by the decedent, Jimmy Brinkley, and the alleged paternity of Monica C. Brinkley?

"2. Did the Trial Court err, in its verdict by not

having sufficient evidence before it to decide whether the decedent openly and notoriously recognized Monica C. Brinkley to be his child?

"3. Did the Trial Court err, in its verdict by extending the provisions of the Estates and Trust Article, Section 1-208 to include posthumous illegitimate children?"

Jimmy Brinkley died intestate on October 11, 1974. He was unmarried. On January 8, 1975, Monica was born. Her mother, Georgianna Hamlin, filed a petition in the Orphans' Court, as next friend, stating that Monica is the daughter of Jimmy Brinkley and requesting that her name be added to the List of Interested Parties filed by the personal representative.

At the hearing, the decedent's mother, the appellant, Elizabeth Brinkley, testified that she had received a phone call from her son in 1974 during which he stated, "Georgianna thinks she is pregnant," to which Mrs. Brinkley replied, "That's your thing, you do what you want to do with it."

Georgianna Hamlin testified that she had separated from her husband in May of 1970. Two children had been borne by her from this marriage, but one had died. Since the separation she had had no contact with her husband until April or May of 1975, when he called to speak with their child, Rosalind. They had never obtained a divorce. In May of 1972, she met the deceased and he moved into her apartment in June of that year. They continued to live together until his death. From the time Jimmy Brinkley moved into her apartment she did not engage in sexual intercourse with anyone else. During this time they maintained a joint checking and savings account. In May of 1974, she became pregnant by the decedent and gave birth to the appellee on January 8, 1975.

Melvin Duncan, Jr., an insurance agent, testified that the decedent and Mrs. Hamlin visited his office in March of 1973. At that time the decedent told Duncan that Mrs. Hamlin was his fiancee and that he wished to obtain a life

insurance policy with her as the beneficiary. At the suggestion of Duncan the decedent's mother was named as the beneficiary; this designation was never changed.

The appellee produced several additional witnesses, friends and relatives of Mrs. Hamlin and the decedent. Each testified that Mrs. Hamlin and Jimmy Brinkley were living together prior to his death, and that they had been told by the decedent that Mrs. Hamlin was pregnant with his child.

Connie Brown was called to the stand by the appellants. She testified that she had lived with the decedent before he had moved into Mrs. Hamlin's apartment. She knew that the decedent was living with Mrs. Hamlin up until his death, but that just before his death the decedent had asked the witness to marry him.

### Dead Man's Statute

The appellant argues that under Courts and Judicial Proceedings Article, § 9-116, also known as the Dead Man's statute, the testimony of Mrs. Hamlin should have been excluded. This section provides:

"A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement."

This statute does not make Mrs. Hamlin incompetent as a witness for all purposes but only in regard to transactions had with or statements made by the decedent.[1] *Stacy v. Burke*, 259 Md. 390, 405, 269 A. 2d 837 (1970). The test for determining a "transaction" within the meaning of the

---

[1]. Mrs. Hamlin is a party to this proceeding notwithstanding the fact that she is simply a next friend (prochein ami). Allers v. Leitch, 213 Md. 390, 131 A. 2d 458 (1957).

statute was stated in *Schifanelli v. Wallace*, 271 Md. 177, 184, 315 A. 2d 513 (1974), citing *Ridgley, Exec. v. Beatty*, 222 Md. 76, 83, 159 A. 2d 651 (1960), "Whether, in case the witness testify falsely, the deceased, if living, could contradict it *of his own knowledge.*" A portion of Mrs. Hamlin's testimony dealt specifically with statements made by the decedent and her dealings with him. It was erroneous to admit her testimony to these facts. *See Whitehurst v. Whitehurst*, 156 Md. 610, 613, 145 A. 204 (1929), dealing with testimony of an alleged spouse in regard to her marriage with the deceased. We note that after proper objection some testimony was admitted subject to exception, and there was no motion to strike the objectionable testimony; thus the objection to this testimony was waived. Md. Rule 522 d 3. *Davis v. State*, 189 Md. 269, 274, 55 A. 2d 702 (1947). We perceive only one objection that may have been properly preserved, which was:

"Q. Did you hold yourselves out as husband and wife?

"A. Yes, I did.

"Mr. Eisenstein: Objection at this point.

"Judge Colgan: Overruled."

Regardless of the waivers, any error on the part of the court in admitting Mrs. Hamlin's testimony was harmless. All the witnesses produced by the appellee testified that the decedent and Mrs. Hamlin were living together at the time Monica was conceived and that the decedent had acknowledged that the child was his. Even the appellant, Mrs. Brinkley, recited that her son had informed her Mrs. Hamlin was pregnant. Appellants' other witness admitted that the deceased and Mrs. Hamlin were living together. In other words there was an abundance of testimony in the record to show that Monica was the daughter of Jimmy Brinkley and no evidence to refute it.

### Lord Mansfield Rule

Appellant further contends that the testimony of Mrs. Hamlin and all other witnesses presented by the appellee

should have been excluded under the Lord Mansfield rule. In the case of *Shelley v. Smith,* 249 Md. 619, 241 A. 2d 682 (1968), it was determined that *Md. Code,* Art. 16, § 66 F (b) relaxes the Lord Mansfield rule and *applies in any case where paternity is in issue in connection with the right to inherit.* That section provides as follows:

"(b) *Hearing without jury; competency to testify; burden of proof.* — At any time after the birth of the child, a hearing shall be held by the court in which the bill or petition is filed without a jury, unless the defendant alleged to be the father of the child elects a jury trial as hereinafter provided. Both the mother and the putative father are competent to testify, but the defendant alleged to be the putative father shall not be compelled to give evidence and the burden is upon the petitioner or complainant to establish, by the weight of evidence required in other civil cases, that the defendant is the father of the child or children in question. When any bill or petition filed under this subtitle shall allege, or the court shall determine after the commencement of proceedings thereunder, that the child's mother was married at the time of the child's conception; the presumption that the child is the legitimate child of her husband may be rebutted by the testimony of persons other than the mother and her husband that, at the time the child was conceived, the mother was in fact living separate and apart from her husband, and it shall not be necessary to establish the nonaccess of the husband. After the court shall have determined that the child's mother and her husband were not living together as man and wife when the child was conceived, both the mother and her husband shall be competent to testify as to the nonaccess of the husband when the child was conceived or to any other relevant matter."

Contrary to the assertions of the appellants, from the

testimony of every witness it could only be adduced that Mrs. Hamlin was living separate and apart from her husband at the time Monica was conceived, and that she was living with Jimmy Brinkley. Concerning nonaccess, Mrs. Hamlin's pointblank response to a question from the appellants was that she had not talked to her husband from 1972 until after Monica was born and had not had sexual relations with him since 1970. The evidence was all clearly admissible under the statute.

### Estates and Trusts Article, § 1-208 (b) (3)

The order of the trial court stated that "Monica C. Brinkley qualifies as a child under the provisions of the Estates and Trusts Article, Section 1-208 (b) (3) and therefore may inherit from the decedent." This section applies only if the father "[h]as openly and notoriously recognized the child to be his child." Appellants contend that the evidence was insufficient for the trial court to determine this.

As we have stated previously, all the testimony was to the effect that the deceased was proud that Mrs. Hamlin was pregnant with his child and withheld that fact from no one. The credibility of these witnesses is a matter left largely to the trial judges. *Herring v. Herring*, 251 Md. 516, 248 A. 2d 117 (1968). We do not find their decision to be clearly erroneous. Indeed we entirely agree with it.

Appellants further contend that the wording of Estates and Trusts Article, § 1-208 (b), "a child born to parents . . ." does not include posthumous illegitimate children. They recognize that Estates and Trusts Article, § 3-107 provides:

> "A child of the decedent who is conceived before the death of the decedent, but born afterwards shall inherit as if he had been born in the lifetime of the decedent. No other after-born relation may be considered as entitled to distribution in his own right."

They argue, however, that the legislature did not intend to allow posthumous illegitimate children to inherit from their

father. It is clear to us that from the plain meaning of the words used in this statute the legislature did not intend any such limitation.

*Motions to Dismiss the Appeal*

In the brief the appellee makes two motions to dismiss the appeal. The basis for the first motion is that the record extract filed by the appellants did not set out the judgment appealed from, the verbatim texts of the pertinent statutes, nor a sufficient statement of facts; thus under Maryland Rule 1035 the appeal should be dismissed. Since the appellee has provided the appropriate material and was not prejudiced by the omissions we shall decline to dismiss the appeal on this ground. *Farmer v. Jamieson,* 31 Md. App. 37, 354 A. 2d 225 (1976).

The second motion to dismiss applies only to Charles Edward Harris, the personal representative of the estate of the decedent. The contention is that since the order appealed from is one which simply determines the heirs of Jimmy Brinkley, the personal representative is protected in making the distribution in accordance with an order of the court, and the appeal will in no way benefit the estate, he is not an aggrieved party. We find *Webster v. Larmore,* 270 Md. 351, 311 A. 2d 405 (1973) to be dispositive of this question, and will dismiss the appeal of the personal representative on the grounds stated by the appellee.

> *Appeal of Charlie Edward Harris, personal representative of the estate of Jimmy Brinkley, dismissed.*
> *Order affirmed.*
> *Appellants Jack Allison Brinkley and Elizabeth Harris Brinkley to pay the costs.*