In the Matter of the ESTATE OF Mark Allen EVJEN, Deceased.

George EVJEN and Frank Cummings, Appellants,

v.

Tracy Lee NOVOTNY, Natural Mother and Next Friend of Zachary Allen Novotny, Appellee.

No. 88-1412.

Supreme Court of Iowa.

Nov. 22, 1989.

Dennis S. Clark, Iowa City, for appellants.

Richard C. Garberson and Susan M. Pence of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and NEUMAN, JJ.

LARSON, Justice.

Under our intestate succession laws, an illegitimate child is considered to be an heir if the father has "recognized" the child as his own, providing the recognition is "general and notorious." Iowa Code § 633.222 (1989). The principal issue in this case is whether a putative father, who died approximately a week after learning of the pregnancy of the mother, generally and notoriously recognized the child for purposes of section 633.222. The district court held that he did, and we agree.

Statements as to our standard of review have ranged from de novo, *see, e.g.,* *McNeill v. McNeill,* 166 Iowa 680, 704, 148 N.W. 643, 650–51 (1914), to review on errors at law, *e.g., In re Estate of Wulf,* 242 Iowa 1012, 1015–16, 48 N.W.2d 890, 892 (1951).

Iowa Code section 633.33 now provides: Actions to set aside or contest wills, for the involuntary appointment of guardi-

ans and conservators, and for the establishment of contested claims shall be triable in probate as law actions, *and all other matters triable in probate shall be tried by the probate court as a proceeding in equity.*

(Emphasis added.)

■ Therefore, despite some inconsistency in our earlier cases, section 633.33 makes it clear that this type of case is triable in equity, and our review is therefore de novo. The parties agree on this point. Concerning the standard of proof, we have held that only a preponderance of evidence is required on the general question of paternity, *see, e.g., In re Estate of Hawk,* 329 N.W.2d 660, 662 (Iowa 1983); but proof of heirship of illegitimate children has been held to require clear and convincing evidence, *McNeill,* 166 Iowa at 701, 148 N.W. at 650. We hold that clear and convincing evidence is required in this case.

Iowa Code section 633.222 provides in part:

Unless the child has been adopted, an illegitimate child inherits from the child's natural father if the evidence proving paternity is available during the father's lifetime, or if the child has been recognized by the father as his child; but the recognition must have been general and notorious, or in writing.

The recognition provision of this section has been in our law for many years. *See, e.g.,* Iowa Code § 3385 (1897) (illegitimate child may inherit if father's recognition is general and notorious). Despite the long history of this language, we have apparently never addressed the specific question raised here: whether a father who dies shortly after conception may be said to have "recognized" the child. This legal question was noted in an early case, but it was not an issue because the father's representative conceded the point. *Duffy v. Duffy,* 114 Iowa 581, 584–85, 87 N.W. 500, 501 (1901).

■ Mark Evjen, the putative father of Zachary Novotny, died on March 14, 1982, as the result of an automobile accident. His estate resists Zachary's claim of heirship on the ground that the requirements of section 633.222 were not shown. The estate first raises an issue on the introduction of evidence of events occurring after Mark's death. Because this case is in equity, the proper procedure is to admit the evidence subject to the objection. We find no error on this ground. On the substantive issues, the estate correctly notes that the child must prove first that he is in fact the son of Mark Evjen, and second, that Mark "recognized" him generally and notoriously before his death.

■ The estate does not strenuously press the paternity issue. In fact, the evidence is virtually conclusive that Zachary is the child of Mark Evjen. The evidence showed that Tracy Novotny and Mark Evjen attended the same high school. After graduation in May 1981, Tracy moved to Minnesota to live with Mark. They lived together throughout 1981, and in February 1982 they moved back to Iowa, living together throughout the entire period. The evidence showed that Tracy and Mark regularly engaged in sexual intercourse and neither used any form of birth control. Tracy testified that she was sexually intimate with no one other than Mark during this period, and that testimony appears to be uncontradicted.

In February 1982, their relationship was terminated. However, on March 7, 1982, Tracy called Mark on the telephone and told him she believed she was pregnant. She said that she had a doctor's appointment for a pregnancy test on March 18. Tracy's pregnancy was confirmed by her doctor on March 18, and Zachary was born on October 9, 1982. We believe the evidence clearly establishes that Mark Evjen is the father of Zachary.

Proving paternity, however, is not enough to establish heirship under section 633.222. It must also be shown that the father "recognized" the child as his own, a difficult matter to prove in this case because of the short time between conception and the father's death.

The estate argues that Mark could not possibly have recognized Zachary because

he was not yet born, thus, "there was no Zachary Novotny to recognize on March 14, 1982 [the date of Mark's death]." The estate further argues that, even assuming an unborn child could be recognized under a proper factual situation, any recognition of Zachary was of too short a duration to establish heirship.

In *Brinkley v. Brinkley*, 33 Md.App. 508, 365 A.2d 304 (1976), the court held, under a statute requiring open and notorious recognition of an illegitimate child, that such a child born after the death of the father could be an heir, reasoning that under Maryland's after-born heir statute, illegitimate children should be treated the same as legitimate children. *Id.* at 512–15, 365 A.2d at 308–09. A similar argument could be based on Iowa's after-born child statute, Iowa Code section 633.220.

■ The estate's interpretation of "recognition" is too restrictive. The term "recognized" does not suggest that a child must have been born prior to the father's death so that the father could identify the child as his own, as the estate seems to suggest. The word "recognized" means to "admit the fact, truth or validity" of a matter. Webster's Third New International Dictionary 1896 (1986). In the context of heirship, the term should be interpreted to mean that the father admitted or acknowledged the paternity. *See Hoover v. Hoover*, 131 Va. 522, 525, 105 S.E. 91, 92 (1920). One Iowa case has said that recognition under this section means recognition of an *obligation. Trier v. Singmaster*, 184 Iowa 307, 318, 167 N.W. 538, 541 (1918).

■ For an illegitimate child to be considered an heir, recognition need not be universal or so general and public as to have been known by all. *Wulf,* 242 Iowa at 1020, 48 N.W.2d at 894. *See generally* Annotation, *What Amounts to Recognition Within Statutes Affecting the Status or Rights of Illegitimates*, 33 A.L.R.2d 705, 738–40 (1954). If the father denies paternity, as opposed to openly acknowledging it, recognition is less likely to be found. *See McNeill,* 166 Iowa at 702–04, 148 N.W. at 650–51; *Duffy,* 114 Iowa at

585, 87 N.W. at 501. Here, there is no evidence that Mark ever denied paternity.

We have said that

[r]ecognition is a mental process. The condition of the mind is made manifest by overt acts or speech. The condition of the mind sometimes finds general recognition, even though effort be made to conceal. A recognition fully and fairly made, leaving a lasting impression on the minds of those with whom the putative father comes in contact in his daily and social life, remains as a permanent recognition. It need not have been universal, or so general and public as to have been known by all. If his conduct among his neighbors and associates and friends be such that it reveals a purpose to make known, rather than to conceal the true relationship he bears to the child, it is sufficient, though there be no spoken word.

*Trier,* 184 Iowa at 317–18, 167 N.W. at 541.

■ With this legal background in mind, we examine the facts introduced at the trial. Although Mark knew of the probable pregnancy for only a week before his death, he told at least five people that Tracy was pregnant and that the baby was his. One witness, Linda Shields, was Mark's aunt by marriage. Mark was living with her at the time he learned of the pregnancy and told her that he had gotten Tracy pregnant, that the baby was his, and that he would probably get back together with her and get married.

Another witness, Brenda Butschi, was Tracy's high school classmate. On the night before Mark was killed, Brenda spent at least two hours with him. Mark told her that Tracy was pregnant and that he wanted to go to the doctor with her to confirm the pregnancy. Another high school classmate, Jeff Palmer, was among Mark's closest friends. On the weekend before he died, Mark told Jeff that he was going to have to settle down and marry Tracy because she was pregnant. This witness testified that, based on his conversation with Mark, there was no question about Mark's claiming the child as his own. He expressed the opinion that, if Mark suspected

**26**

that someone else was the father, Mark would have responded with physical action against the man.

Mark's cousin, Rodney Larson, discussed the pregnancy with Mark at various times during the last week of Mark's life. Mark told Rodney several times that the baby was his. Another witness, Barbara Heard, also testified to statements by Mark that he believed it was his child and that he wanted to have a son to be named after his own father.

We believe that this evidence demonstrates the kind of "recognition fully and fairly made, leaving a lasting impression on the minds of those with whom the putative father comes in contact" which we have said constitutes recognition for this purpose. *Trier*, 184 Iowa at 317, 167 N.W. at 541.

The court correctly found that Mark was the father of Zachary and that he had recognized him openly and notoriously within the meaning of Iowa Code section 633.222. Accordingly, we affirm.

AFFIRMED.