# IN THE COURT OF APPEALS OF IOWA

No. 21-0007
Filed September 22, 2021

**IN THE INTEREST OF D.T.,**
**Minor Child,**

**T.B., Mother,**
    Petitioner-Appellant,

**M.T., Father,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Allamakee County, Linnea M. N. Nicol, District Associate Judge.

A mother appeals the denial of her petition to terminate the parental rights of her child's father. **AFFIRMED.**

Andrew J. Casper of Putnam, Thompson & Casper, P.L.L.C, Decorah, for appellant mother.

Whitney L. Gessner of Gessner Law Office, Monona, for appellee father.

Barry S. Mueller, Postville, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A mother of a child born in 2015 appeals the denial of her petition to terminate the parental rights of the child's father.

Iowa Code section 600A.8(3) (2020) authorizes termination of parental rights where a "parent has abandoned the child." If a child is six months or older, "a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following":

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). The "paramount consideration" is "[t]he best interest of the child." *Id.* § 600A.1(2); *see also In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020).

The district court concluded the father "abandoned the child." However, the court declined to terminate the father's parental rights in light of the mother's concession that the father could not pay child support given his receipt of social security disability benefits as well as the child's potential eligibility for dependent benefits. The court made the following pertinent findings:

Mother's Exhibit 101 and Father's Exhibit A are the same Default Decree . . . wherein [the mother] achieved an order for sole custody, no child support, and the right to claim [the child] on her tax returns through a default order. . . .

. . . .

The mother reports the father has provided no financial support to the child. The Court will not fault the father for failing to provide financial support in light of the [default] order . . . . The Petitioner has requested the Court waive child support based on the Respondent's income from the Social Security Administration. The Court finds grounds to waive child support, medical support and sharing of medical expenses. The parties report to the Court that no one has applied for Social Security benefits for [the child]. There is no good explanation in the record why no one applied for these financial benefits for [the child].

On appeal, the mother contends "[m]any of [the] factors relating to the abandonment finding[] also tend to show it is in the child's best interest to terminate parental rights." She points to the father's "current and past conduct" and, in particular, his "extensive history of drug use," his "sordid history of domestic violence," and his failure "to demonstrate a continued interest in" the child.

On our de novo review, we find support for the mother's assertions. But, as the district court determined, the key factor in this best interest analysis is the child's long-term financial interest. The mother waived receipt of child support. As discussed below, the court's termination of the father's parental rights would likely deprive the child of a significant, and cognizable, amount of federal financial benefits over the next several years. Deprivation of these benefits is not in his best interest.

We begin with federal law. The Social Security Act states, "Every child (as defined in section 416(e) of this title) of an individual entitled to . . . disability insurance benefits . . . shall be entitled to a child's insurance benefit for each month." 42 U.S.C. § 402(d)(1) (2021). Section 416(e) defines a child as "the child

or legally adopted child of an individual." Implementing regulations provide that a child "may be eligible for benefits as the insured's natural child if . . . [the child] could inherit the insured's personal property as his or her natural child under State inheritance laws" or "the insured has either acknowledged in writing that [the child is] his or her child [or] been decreed by a court to be [the child's] father or mother." 20 C.F.R. § 404.355 (a)(1), (3) .

Applying 20 C.F.R. § 404.355(a)(1), Iowa inheritance law states, "Unless the child has been adopted, a biological child inherits from the child's biological father if the evidence proving paternity is available during the father's lifetime, or if the child has been recognized by the father as his child." Iowa Code § 633.222. The Social Security Administration has opined that those inheritance rights survive termination of parental rights. *See PR 09-085 Inheritance Rights of a Child When Parental Rights are Terminated in the State of Iowa*, Soc. Sec. Admin. (Mar. 27, 2009), https://secure.ssa.gov/poms.nsf/lnx/1501805018 ("[T]he language of Iowa's Probate Code indicates that a child *would* inherit from a biological parent even if the parent's parental rights were terminated, so long as the child had not been adopted." (emphasis added)). At the same time, the Iowa Court of Appeals has concluded termination of a father's parental rights "eliminates [the child's] right to support or any prospective inheritance, windfall, or estate from [the father]." *See In re G.A.Z.*, No. 01-1103, 2002 WL 575640, at *5 (Iowa Ct. App. Feb. 20, 2002); Richard L. Brown, *Disinheriting the "Legal Orphan": Inheritance Rights of Children after Termination of Parental Rights*, 70 Mo. L. Rev. 125, 137 (2005). Nonetheless, we presume the Social Security Administration would follow its interpretation of its

own statute and regulations. Accordingly, the child would appear to qualify as a natural child under Iowa's inheritance laws. *See* 20 C.F.R. 404.355(a)(1).

The child also would qualify as a natural child based on the paternity decree and the father's recognition of the child as his child. *See* 20 C.F.R. 404.355(a)(3); *see also In re Estate of Evjen*, 448 N.W.2d 23, 26 (Iowa 1989) (finding recognition where father predeceased birth of child); *Mohr v. Langerman*, No. 13-1422, 2014 WL 5243364, at *5 (Iowa Ct. App. Oct. 15, 2014) ("[A]lthough the language of the statute providing for inheritance of biological children from biological fathers has always included the word 'or' between the paternity clause and the recognition clause, it has also always been interpreted to require proof of both."); *cf. Beeler v. Astrue*, 651 F.3d 954, 960 (8th Cir. 2011) (finding recognition requirement was not satisfied for a child conceived after the father passed away).

42 U.S.C. section 416(e) is not the only definition of "child" in the Social Security Act. Another provision on determination of family status states, "In determining whether an applicant is the child . . . of a fully or currently insured individual . . . the Commissioner of Social Security shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insurance individual is domiciled . . . ." 42 U.S.C. § 416(h)(2)(A). As noted, the Social Security Administration has opined that a child may inherit under Iowa's inheritance law notwithstanding termination of parental rights.

A third provision states,

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be

deemed to be the child of such insured individual if: . . . (B) in the case of an insured individual entitled to disability insurance benefits . . . (i) such insured individual— . . . (II) has been decreed by a court to be the . . . father of the applicant . . . .

*Id.* § 416(h)(3)(B)(i)(II). Again, it is undisputed that paternity was established and the father recognized the child as his.

In sum, the child would appear to satisfy all three of the federal definitions of "child" for purposes of receipt of dependent benefits. The child would qualify as a child under section 416(e) because he was not adopted and would be eligible under State inheritance law and pursuant to the paternity decree. He would similarly qualify under section 416(h)(2)(A) based on state inheritance law. And he would qualify under section 416(h)(3)(B)(i)(II) because paternity was established. *See, e.g., PR 11-144 MOS-State: Wisconsin—Effect Of Termination Of Natural Parental Rights On Inheritance Rights Number Holder: George E., Jr. / Claimant: Christian W.*, Soc. Sec. Admin. (Aug. 17, 2011), https://secure.ssa.gov/poms.nsf/lnx/1501805055 (conducting a similar analysis under the Social Security Act and Wisconsin law) (last visited Sept. 16, 2021).

It is also undisputed that the child was a dependent of the father and was unmarried and under the age of eighteen. *See* 42 U.S.C. § 402(d)(1)(B), (C). The only requirement yet to be satisfied was the filing of an application on the child's behalf. *See id.* § 402(d)(1)(A). There appears to be no time limit other than the age of the child for purposes of that requirement. It is also worth noting that receipt of dependent benefits was far from speculative, given the father's established eligibility for social security disability income. *Cf. In re J.K.N.*, No. 08-2069, 2009 WL 1677000, at *4 (Iowa Ct. App. June 17, 2009) (concluding district court's

reliance on "slim possibility" that parent "might" become eligible for Social Security Disability benefits to deny termination petition was misplaced). Thus, the child was apparently entitled to social security disability dependent benefits under federal law, even if the father's parental rights were terminated.

We must also consider state law. We begin with Iowa Code section 600A.2(19), which defines "[t]ermination of parental rights" as "a complete severance and extinguishment of a parent-child relationship between one or both living parents and the child." The court of appeals has stated, "[T]ermination of parental rights [under this provision] completely severs the duties imposed by the parent-child relationship, *including the duty of support.*" *State ex rel. Perkins v. Perkins*, 325 N.W.2d 764, 765 (Iowa Ct. App. 1982) (emphasis added); *see also In re T.Q.*, 519 N.W.2d 105, 107 (Iowa Ct. App. 1994) (affirming denial of parent's petition to terminate his own parental rights on the ground that he "would have no duty to support" that could be enforced); *In re J.L.W.*, 496 N.W.2d 280, 282 (Iowa Ct. App. 1992) (affirming denial of father's termination-of-parental-rights petition under the best interests prong on the ground "the father was merely seeking relief from his child support obligation."); *G.A.Z.*, 2002 WL 575640, at *5 (Iowa Ct. App. Feb. 20, 2002) (concluding termination of parental rights under chapter 232 was not in the child's best interests because it "eliminates [the child's] right to support or any prospective inheritance, windfall, or estate from" the father). Under Iowa statutory law and case law, then, termination of the father's parental rights would foreclose the child's receipt of social security dependent benefits.

Though the child may be entitled to dependent benefits under federal law notwithstanding the termination of the father's parental rights, we conclude Iowa

Code section 600A.2(19) and our precedent support the district court's conclusion that the child stands to lose entitlement to social security dependent benefits if the father's parental rights are terminated.

The potential losses are significant. The child could lose medical as well as monetary benefits. *See* 42 U.S.C. § 402(d)(2) ("Such child's insurance benefit for each month shall, if the [father] . . . has not died . . . be equal to one-half of the primary insurance amount of such individual for such month. Such child's insurance benefit for each month shall, if such individual has died in or prior to such month, be equal to three-fourths of the primary insurance amount of such individual."). The father is entitled to $783 per month for the remainder of his life. The child, then, could receive $391.50 per month while the father is alive and $587.25 per month if the father dies while the child is a minor.

In light of the potential loss of these benefits, and notwithstanding the factors weighing in favor of terminating the father's rights, we affirm the district court's conclusion that termination of the father's parental rights was not in the child's best interests. *See* Iowa Code § 600A.1(1)–(2) (including consideration of "the fulfillment of financial obligations" within the definition of "best interest of the child"); *B.H.A.*, 938 N.W.2d at 232–33 (looking to a child's "long-range as well as immediate interests" (citation omitted)); *see also In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (differentiating Iowa Code chapters 600A and 232 as to whether courts should consider loss of financial support as part of the best interest analysis and stating "taking child support directly into account under chapter 600A makes sense because that is a private termination statute"); *cf. In re A.H.*, No. 21-0180, 2021 WL 3076741, at *2 (Iowa Ct. App. July 21, 2021) (affirming termination of

parental rights under chapter 232 notwithstanding father's claim he "would support the children with future governmental benefits"); *In re H.L.*, No. 14-1288, 2015 WL 4642424, at *1 (Iowa Ct. App. Aug. 5, 2015) (affirming termination under chapter 600A where the father's only contact with the child after a certain date was a letter informing the child's mother of the child's eligibility for social security disability dependent benefits and the father failed to pay child support when those benefits were unavailable); *In re Marriage of Morrical*, No. 10-1963, 2011 WL 3925687, at *3 (Iowa Ct. App. Sept. 8, 2011) ("Section 598.22C provides that payment of benefits fully satisfy and substitute for the support obligations for the same period of time for which the benefits are awarded. . . . We believe better public policy is to leave the child support obligation in place and provide that SSD benefits paid satisfy and substitute for the support obligation."); *In re Marriage of Wicks*, No. 00-1525, 2001 WL 1130192, at *1 (Iowa Ct. App. Sept. 26, 2001) (noting children of a parent receiving social security disability benefits each received a monthly dependent allowance).[1]

    **AFFIRMED.**

    Bower, C.J. concurs; Schumacher, J., dissents.

---

[1] Our conclusion also aligns with out-of-state appellate opinions. *See In re B.O.G.*, 5 So. 3d 1018, 1027 (La. Ct. App. 2009) (holding termination of parental rights was not in the child's best interests, in part, because father was contributing social security disability dependent benefits to children); *In re Marriage of Furrow*, 63 P.3d 821, 823 (Wash. Ct. App. 2003) (stating "an order terminating parental rights does far more than merely terminate the rights of a relinquishing parent. It deprives the children of their right to financial support from that parent . . . and their right to social security benefits in the event of that parent's death or disability").

**SCHUMACHER, Judge** (dissenting)

I respectfully dissent from the majority opinion, which concludes termination of the father's parental rights is not in D.T.'s best interest. As referenced by the majority, there is a lack of contest as to the district court determination that the father abandoned D.T. We are left only to conduct a de novo review of the record on whether termination of the father's parental rights is in D.T.'s best interest. I depart from the majority that concludes the mother did not meet her burden that termination of the father's parental rights was in D.T.'s best interest due only to the possibility of the receipt of social security disability benefits by the child in the future.

The Iowa legislature requires the best interest of the child to "be the *paramount consideration* in interpreting" the private termination of parental rights. Iowa Code § 600A.1 (emphasis added). Private termination proceedings under Iowa Code chapter 600A are a two-step process. *See id.* §§ 600A.1, .8. First, the moving parent must first prove by clear and convincing evidence the grounds for ordering termination of parental rights. *See id.* § 600A.8. Here, the district court determined that the father had abandoned D.T. by clear and convincing evidence. A second step, however, is required. The mother must prove by clear and convincing evidence that termination is in the best interests of D.T. *In re B.H.A.,* 938 N.W.2d 227, 232 (Iowa 2020). On this record, the mother has met her burden of proof.

Our supreme court has borrowed from the statutory best-interest framework outlined in Iowa Code chapter 232. *In re A.H.B.*, 791 N.W.2d 687, 690–91 (Iowa 2010). That framework directs this court to "give primary consideration to the

child's safety, to the best placement for furthering the long-term nurturing and growth of the child[.]" Iowa Code § 232.116(2). Of importance is the child's emotional and psychological health, *see id.*, and the closeness of the parent-child bond, *see id.* 232.116(3)(c). Finally, our supreme court has said, "It is well-settled law that we cannot deprive a child of permanency after the [petitioner] has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.H.B.*, 791 N.W.2d at 691 (alteration in original) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)).

"The best-interest-of-the-child framework has backward-looking and forward-looking components." *B.H.A.*, 938 N.W.2d at 232. In determining best interests,

> We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing.

*R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998) (borrowing backward-looking and forward-looking components from chapter 232 to fill in chapter 600A's analytical framework); *see also In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981) (citation omitted).

As further noted by our supreme court, whether the best interests of a child will be served by the termination of parental rights must be decided case by case. Our supreme court has determined that "caselaw has limited utility" when considering the best-interest-of-the-child framework. *In re Q.G.*, 911 N.W.2d 761, 771 (Iowa 2018). The court in *Q.G.* recognized our long-held refusal to adopt a

formulaic or rule-bound approach. *Id.* While caselaw demonstrates how chapter 600A factors weigh in the balance of the best-interest determination, we expressly stated that "[e]ach case must be decided on its own facts." *Id.*; *see In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984) (stating matters under chapter 600A are cases in equity); *B.H.A.*, 938 N.W.2d at 232–33.

Armed with this guidance from our supreme court, a de novo review of the record reveals these facts. D.T.'s father has not requested visitation for at least the last six months, offered financial support, or been involved in D.T.'s schooling. D.T. has behavioral struggles and has an independent education plan (IEP) at school. The father has not attended any of the IEP meetings. The father has a conviction for domestic abuse assault against D.T.'s mother as well as another former paramour. D.T.'s father has a history of use of illegal drugs. One week before the termination hearing, he was required to move from his parents' home where he had been staying due to the discovery of drugs in the home by his parents. He acknowledges his lack of involvement in his son's life even though distance has not separated him from his son's residence. At one point, the father lived only a block from his son, yet made no efforts to exercise visitation. The father has provided zero financial assistance. He has failed to provide any gifts on special occasions or birthday cards. The father's statement in isolation that "I want to be a father in his life" rings hollow.[2] While many of these factors are of

---

[2] Our supreme court determined in 2018 a lack of proof existed that termination was in the children's best interest when the father who had a prior bond with the children was released from prison, had employment lined up, had addressed his substance abuse concerns while in prison, and had obtained appropriate housing. *In re Q.C.*, 911 N.W.2d 761, 774 (Iowa 2018). These mitigating factors are not present in the instant record. Quite the opposite is apparent.

appropriate consideration for whether the child was abandoned by his father, they are also appropriate elements of our best interest consideration.[3]

Contrasting, the mother has provided all the daily care for D.T. and D.T.'s younger sibling. She is employed and plans to pursue a degree in social work. Without a court order, she has allowed continued involvement of paternal relatives with D.T. Under the facts of this case, the possibility of future financial support does not tip the scale given other proven factors. Termination of the father's parental rights is in D.T.'s best interest. Accordingly, the denial of the mother's petition for termination should be reversed.

---

[3] The closeness of the parent-child bond and the father's efforts to address his substance abuse issues were considered in determining best interest.