**Billy V. HALL, M.D., Plaintiff,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. No. 85–5128.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 1, 1986.

J.L. Hendren, Bentonville, Ark., for plaintiff.

Charlene M. Seifert, Asst. Regional Counsel Office of the General Counsel U.S. Dept. of Health and Human Services, Dallas, Tex., and J. Michael Fitzhugh, U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION AND ORDER

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Billy V. Hall, M.D., seeks judicial review of a final decision of the Secretary of Health and Human Services pursuant to 42 U.S.C. § 405(g). This matter is presently before the court on cross-motions for summary judgment. Based upon the court's review of nearly 8,000 pages of administrative record developed below, the court affirms the decision of the Secretary.

### I. Facts

Billy V. Hall, M.D., is a physician practicing in Gravette, Arkansas, and has practiced there since July of 1951. At the time Dr. Hall began his practice, Gravette was a small town located in the northwest corner of Arkansas. At the present, Dr. Hall treats patients from Arkansas, Missouri and Oklahoma. On July 20, 1983, Dr. Hall was notified by the Office of Health Financing Integrity (OHFI), now known as the Office of the Inspector General (OIG—and hereinafter referred to as OHFI/OIG for purposes of this opinion) that he had been excluded from participation in the Medicare and Medicaid programs for a period of five years based upon certain alleged failures of Dr. Hall to meet the obligations placed upon him by section 1160 of the Social Security Act.

### II. Administrative History

Dr. Hall originally came under the scrutiny of the Secretary in 1975 when the Gravette Medical Center was scheduled for review by the Arkansas Foundation for Medical Care (AFMC) pursuant to 42 C.F.R. § 463.6. On September 11, 1980, the Medical Evaluation Committee of AFMC reviewed the results of three studies performed at Gravette Medical Center. Based upon that review, AFMC determined that plaintiff had violated his obligations under section 1160(a) of the Social Security Act. The AFMC notified plaintiff of its findings by letter dated October 14, 1980. Pursuant to 42 C.F.R. § 474.4, Dr. Hall was given an opportunity to submit additional evidence at a January 8, 1981, meeting with the AFMC; however, at that time Dr. Hall apparently refused to discuss the cases involved and requested that the AFMC's recommended sanction be forwarded to the Secretary. By a letter dated August 21, 1981, AFMC afforded Dr. Hall another opportunity to submit additional evidence about specific cases. Dr. Hall eventually met with the AFMC committee and board members on January 28, 1982, at which time Dr. Hall made a case-by-case presentation. Once more, the AFMC concluded that the case histories before it reflected that Dr. Hall had furnished services that were not medically necessary, that he had provided services which did not meet professionally recognized standards of care, and that he had failed to provide adequate documentation to support the

need for care or the reason for rendering a particular treatment.[1]

Consequently, the Secretary advised plaintiff on July 21, 1982, that he would be excluded from participation in the Medicare and Medicaid programs. Dr. Hall again submitted exhibits, explanations and arguments to the OFHI/OIG, but on July 20, 1983, he was notified that he would in fact be excluded from participation in the programs.

Dr. Hall then requested a hearing before an administrative law judge (ALJ). A full hearing was held on January 16–27, 1984. On September 6, 1984, the ALJ issued his decision in which he recommended that the exclusion be affirmed. Plaintiff subsequently sought review of the hearing decision before the Appeals Council. Oral arguments were heard, and on June 5, 1985, the Appeals Council upheld the five-year suspension. The decision of the Appeals Council became the final decision of the Secretary. It is that decision of which Dr. Hall seeks review in this court.

### III. Statutory and Regulatory Provisions

At the times relevant to this action section 1160 of the Social Security Act imposed various obligations upon health care providers.[2] Specifically, health care practitioners were obligated to assure that any services ordered or provided by the practitioner to beneficiaries and recipients

(1) will be provided only when, and to the extent, medically necessary;

(2) will be of a quality which meets professionally recognized standards of health care; and

(3) will be supported by evidence of medical necessity and quality.

During the time of Dr. Hall's review, the obligations of section 1160 were enforced through a system of professional standards review; these professional standards reviews were effectuated through professional standards review organizations (PSRO). In Arkansas, AFMC was designated by the Secretary as the local PSRO and was made up of doctors of medicine or osteopathy. 42 U.S.C. § 1320c–1(1)(A). As PSRO for Arkansas, AFMC was responsible for determining whether services rendered were medically necessary, whether the quality of such services met professionally recognized standards of health care, and whether, if provided in a hospital on an in-patient basis, such services should be provided on an in-patient basis, whether the services could be provided more effectively on an out-patient basis or more economically in an in-patient health care facility of a different type.

Through various statutory and regulatory mechanisms, the PSRO was empowered to inquire as to whether the provision of services by a physician involved potential or actual violations of his or her statutory obligations. If in fact the PSRO did identify an actual violation, it was to recommend possible sanctions based upon: (a) the type offense involved; (b) the severity of the offense; (c) the anticipated deterrent effect of the recommended sanction; (d) the previous sanction record of the provider; and (e) other factors relevant to the case. 42 C.F.R. § 474.6. Having done so, the PSRO was then required to notify the physician of its determination and to provide the practitioner with an opportunity to submit evidence and request further review. 42 U.S.C. § 1320c–10.

In addition, the PSRO was required to submit its findings and recommendations to OHFI/OIG. If OHFI/OIG concurred in the PSRO's determination, it could impose its sanction upon delivery of written notice to the physician. A dissatisfied practitioner could seek review before an ALJ and, if necessary, before a district court.

---

**1.** The vote to impose sanctions was 25 to 0 with two abstentions.

**2.** During the times relevant to Dr. Hall's exclusion, § 1160 of the Social Security Act was codified at 42 U.S.C. § 1320c–9. However, Pub.L. No. 97–248 revised the statute in 1982 and its provisions may presently be found at 42 U.S.C. § 1320c–5. All citations in this memorandum opinion will refer to the statute prior to its 1982 revision.

## IV. Standard of Review

On review the court must accept as conclusive all findings of the Secretary which are supported by substantial evidence. *Brand v. Secretary of HEW*, 623 F.2d 523, 527 (8th Cir.1980); *Celebrezze v. Bolas*, 316 F.2d 498, 500 (8th Cir.1983). Substantial evidence is that body of relevant evidence taken from the record as a whole necessary to support a reasonable conclusion, taking into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 484–85, 71 S.Ct. 456, 462–63, 95 L.Ed. 456 (1951); *Brand v. Secretary of HEW, supra,* at 527. Although there may be conflicting evidence contained in the record, the court's review of the final administrative decision is limited to deciding whether it is supported by substantial evidence. *Wilson v. Schweiker*, 681 F.2d 526 (8th Cir.1982).

## V. Analysis

■ Plaintiff first contends that he was denied due process of law by unreasonable delays in the administrative processing of his claim. Plaintiff candidly admits that he can find no cases addressing the problem of administrative delay in this setting. Instead, he relies upon cases such as *White v. Matthews*, 559 F.2d 852 (2d Cir.1977), which deal with delays in processing Social Security disability benefit claims. Although the excruciating slowness of the administrative process may indeed be frustrating to those who must endure it, the court does not believe, as a matter of law, that administrative delay by itself constitutes a denial of due process of law.

The court's holding is based in part upon a lack of authority supporting plaintiff's contention and in part upon the facts of this case. The administrative record consists of nearly 8,000 pages of documents, transcripts, medical records, briefs of counsel, etc. The medical exhibits alone consist of almost 5,000 pages of charts, laboratory findings and clinical care notes. Such material is technical and must be reviewed carefully. The sheer volume and complexity of the material to be considered dictates that the review process, at whatever level, will be time consuming.

■ Dr. Hall also contends that he was denied due process of law by the failure of AFMC, the ALJ, the Appeals Council and the defendant to follow the applicable law and regulations in imposing sanctions against him. The record is replete with evidence that the AFMC fully complied with the relevant law and regulations with respect to the handling of the charges against the plaintiff. The record contains the norms, criteria and standards, which the Appeals Council found were properly developed and disseminated by AFMC pursuant to the statute and regulations. (See Exs. 10 and 11, Ad.Rec. 1382–1625 and 1626–2449). The court believes that there is substantial evidence to support this finding by the Appeals Council. In addition to the determination by the Appeals Council that AFMC had fully complied with the statutory and regulatory authorities, the Health Care Financing Administration would not have certified AFMC as PSRO for Arkansas if AFMC had not satisfied all requirements mandated by statute or regulation.

■ As to the true focus of inquiry regarding Dr. Hall, the court is convinced that there is substantial evidence in the record to support a finding that there were a great number of cases presented for review which reflected violations of one or more of the statutory obligations found in section 1160. In light of the role of this court in reviewing the findings of the Secretary, it is determined that the body of relevant evidence taken from the record as a whole supports a finding that Dr. Hall failed to comply with section 1160 by performing unnecessary surgery, prescribing inappropriate or inadequate medication, and poorly documenting the necessity of admission or procedure.

Accordingly, as the Appeals Council's decision is supported by substantial evidence taken from the record as a whole, the decision of the Secretary is affirmed.