Billy V. HALL, M.D., Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Appellee.

No. 86–2380.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Oct. 5, 1987.

J.L. Hendren, Bentonville, Ark., for appellant.

Charlene M. Seifert, Dallas, Tex., for appellee.

Before ROSS,[*] Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Billy V. Hall, M.D., appeals from the district court's[1] order affirming the decision of the Secretary of Health and Human Services to exclude him from participation in the Medicare and Medicaid programs for a period of five years, 648 F.Supp. 166. This sanction was imposed pursuant to section 1160[2] of the Social Security Act, 42 U.S.C. § 1320c–9. Hall argues that he was denied due process of law; that the Secretary failed to follow proper law and regulations in imposing the sanction; and that the Secretary's decision was not supported by substantial evidence. For the reasons discussed below, we affirm.

## I. BACKGROUND.

### A. Statutory and Regulatory Framework.

Section 1160 of the Social Security Act imposed various obligations upon health

---

[*] The Honorable Donald R. Ross, active Judge of this court at the time this case was submitted, took senior status on June 13, 1987, before this opinion was filed.

[1]. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

[2]. During all times relevant to this appeal, section 1160 of the Social Security Act was codified at 42 U.S.C. § 1320c–9. However, it was revised and recodified by Pub.L. No. 97–248 (Sept. 3, 1982), and its provisions are now found at 42 U.S.C. § 1320c–5. All citations in this opinion refer to the statute prior to the 1982 revision.

care practitioners. Practitioners were required to assure that services or items ordered or provided by them to beneficiaries and recipients were:

(1) provided only when, and to the extent, medically necessary;

(2) of a quality which met professionally recognized standards of health care; and

(3) supported by evidence of medical necessity and quality.

During the time of Hall's review, these obligations were enforced through a system of professional standards reviews, which were conducted by professional standards review organizations (PSRO).

In Arkansas, the Arkansas Foundation for Medical Care (AFMC) was designated as the local PSRO. It was composed of doctors of medicine and osteopathy licensed to practice in Arkansas. 42 U.S.C. § 1320c–1(1)(A).

The PSRO was responsible for determining whether a practitioner had violated any of his or her statutory obligations. In the event the PSRO identified an actual violation, it was required to recommend a possible sanction. 42 C.F.R. § 474.6.[3] The PSRO was then to notify the practitioner of its determination and to provide an opportunity for the practitioner to submit evidence and request further review. 42 U.S.C. § 1320c–10.

Finally, the PSRO was required to submit its findings and recommendations to the Office of Health Financing Integrity (OHFI), now known as the Office of the Inspector General (OIG) (hereinafter referred to as OHFI/OIG). If OHFI/OIG concurred in the PSRO's determination, it could impose the sanction upon delivery of written notice to the practitioner. A dissatisfied practitioner could seek review before an administrative law judge (ALJ) and, if necessary, before an agency appeals council. Once these administrative avenues had been exhausted, the practitioner could secure review in a district court.

**B. Facts.**

Hall is a medical doctor practicing in Gravette, Arkansas. Hall has maintained a general practice of medicine in Gravette since July of 1951. At present, he is on the staff of the Gravette Medical Center (Center), a non-profit medical foundation, for which he also acts as Chairman of the Board. Hall admits approximately 2,000 patients annually to the Center. Roughly fifty percent of Hall's practice is Medicare and Medicaid related.

Hall originally became the subject of a review by AFMC in 1975 when the Center was scheduled for review pursuant to 42 C.F.R. § 463.6. On September 11, 1980, the Medical Evaluation Committee of AFMC reviewed the results of its study conducted at the Center. Based upon that review and previous monitoring, AFMC determined that Hall had violated his obligations under section 1160(a) of the Social Security Act. AFMC notified Hall of its findings and of its recommendation that he be sanctioned by letter dated October 14, 1980. Hall was provided with an opportunity to submit additional evidence at a meeting with AFMC on January 8, 1981. At that meeting, Hall apparently refused to discuss the cases involved and requested that AFMC's findings and recommended sanction be forwarded directly to the Secretary.

By letter dated August 21, 1981, AFMC afforded Hall a second opportunity to submit additional evidence or information about the specific cases which, AFMC believed, indicated that he had violated his section 1160 obligations. Hall met with the AFMC committee on January 28, 1982, and made a case by case presentation.

Again, AFMC concluded that the cases reflected a pattern of violations of the section 1160 obligations. Specifically, AFMC found that Hall had furnished services which were harmful or medically unnecessary; that he had provided services which did not meet professionally recognized standards of health care; and that he had

---

**3.** 42 C.F.R. § 474 *et seq.* was amended and redesignated in 51 Fed.Reg. 34786 (Sept. 30, 1986). Its provisions may now be found at 42 C.F.R. § 1004 *et seq.* All references in this opinion shall be to the regulations as they existed prior to redesignation.

failed to provide adequate documentation or reasons for the rendering of particular treatments.

The OHFI/OIG advised Hall of its intention to exclude him from participation in the Medicare and Medicaid programs for a period of five years by letter dated July 21, 1982. Hall was permitted to submit additional exhibits, explanations and arguments to the OFHI/OIG, but on July 20, 1983, after further review, he was notified that he would be excluded from participation in the programs.

Hall then requested a hearing before an ALJ, pursuant to 42 U.S.C. § 1320c–9(b)(4). A full hearing was held on January 16–27, 1984. On September 6, 1984, the ALJ issued his decision, based on more than 8,000 pages of administrative record, in which he recommended that the exclusion be affirmed.

On October 14, 1984, Hall requested Appeals Council review of the ALJ decision, which request was granted. On June 5, 1985, the Appeals Council affirmed the five-year suspension. The Appeals Council determined that Hall had violated one or more of the section 1160 physician obligations in fifty-seven of the sixty-seven cases upon which Hall's exclusion was based. The decision of the Appeals Council became the final decision of the Secretary.

Hall then brought an action for review of the Secretary's determination in the district court, pursuant to 42 U.S.C. §§ 405(g) and 1320c–9(b)(4). On cross-motions for summary judgment, the district court granted the Secretary's motion and entered an order affirming the Secretary's decision. This appeal followed.

4. Hall was not actually excluded from the Medicare/Medicaid programs until August 20, 1983, 30 days after he received notification of the OFHI/OIG's intention to impose the sanction.

5. The *Heckler* Court also observed that Congress had clearly expressed its disapproval of mandatory deadlines. In criticizing the decision in *Blankenship v. Secretary of HEW*, No. C750185L(A) (W.D.Ky., May 6, 1976), which imposed judicially prescribed hearing deadlines on the Secretary, the House Committee on Ways and Means stated that "[e]stablishing strict time

## II. DISCUSSION.

Hall first contends that he was denied due process of law as a result of unreasonable delays in the administrative processing of his case. Specifically, Hall argues a delay of more than four years between AFMC's initial decision to recommend the imposition of a sanction on January 8, 1981,[4] and the final administrative action with respect to that recommendation on June 5, 1985, was unreasonable, a violation of his statutory right under 42 U.S.C. 1320c–9(b)(4) to a hearing within a reasonable time, and a denial of due process. Section 1320c–9(b)(4) provided that "[a]ny person furnishing services described in paragraph (1) who is dissatisfied with a determination made by the Secretary under this subsection shall be entitled to reasonable notice and opportunity for a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title * * *."

Neither section 405(b) nor section 1320c–9 impose a mandatory time limit on administrative review. In *Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984), the Supreme Court reversed the imposition by a district court of a 90–day time limit, under 42 U.S.C. § 405(b), on the Secretary's resolution of appeals from denials of Social Security disability benefits. In overturning the judicially imposed time limit, the Court noted that Congress' failure to specify a time limit in section 405(b) must have been intentional because that section is part of a complex statute which sometimes imposes a time limit on administrative review, *see, e.g.*, 42 U.S.C. § 1383(c)(2), and sometimes does not. *Heckler v. Day* at 118, 104 S.Ct. at 2257.[5]

limits for the adjudication of every case could result in incorrect determinations because time was not available to * * * reach well-reasoned decisions in difficult cases." *Heckler v. Day*, 467 U.S. at 115, 104 S.Ct. at 2255 (quoting H.R.Rep. No. 97–588, pp. 19–20 (1982)).

The Court's proscription of judicially required deadlines which impose absolute periods of limitations applicable to all claims does not, however, prohibit a federal court from remedying individual violations of section 405(b). *Id.* at 119 n. 33, 104 S.Ct. at 2257 n. 33.

While section 405(b) does not specify mandatory deadlines, a number of courts have held that section 405(b) does require the Secretary to provide a hearing within a reasonable time.[6] *See White v. Mathews,* 559 F.2d 852, 858 (2nd Cir.1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed. 2d 500 (1978). We believe that this reasoning extends to section 1320c–9.

■ We must now determine whether the delay in this case was reasonable. We first consider the pre-sanction period, between the January 8, 1981 recommendation of sanction and the August 20, 1983 imposition thereof. "Before an agency action may be set aside for lack of punctuality, the aggrieved party must show that it was prejudiced by the delay." *Panhandle Cooperative Association v. EPA,* 771 F.2d 1149, 1153 (8th Cir.1985). Here, Hall is unable to demonstrate prejudice because no adverse administrative action had been taken. During this period he was not prohibited from participating in the Medicare/Medicaid programs. Furthermore, it appears that Hall contributed to any delay by refusing to cooperate with AFMC during its initial investigation.

■ We next consider the post-sanction delay, between the imposition of the sanction and the Secretary's final decision affirming the sanction. It was during this time that ALJ and Appeals Council review occurred. In light of the circumstances, we cannot agree with Hall that the delay was unreasonable. As the district court noted, the administrative record consists of nearly 8,000 pages of documents, transcripts, medical records, briefs, etc. The sheer volume and complexity of the material required a time-consuming review. Far from delay, the record demonstrates prompt, diligent and sustained agency action.

Hall next contends that the Secretary failed to follow applicable law and regulations in imposing sanctions against him. He argues, *inter alia,* that (1) prior to the recommendation of sanction, he was not

notified by AFMC of the existence of situations that could result in violation of his obligations nor was he provided with help to prevent their occurrence, in violation of 42 C.F.R. § 474.4; (2) AFMC failed to provide him with written norms, criteria and standards pursuant to 42 C.F.R. § 466.50 *et seq.;* and (3) the ALJ failed to use a medical advisor in reaching his decision, which Hall asserts is required by 42 C.F.R. § 473.4(a).

■ As the district court suggested, the record is replete with evidence that AFMC, the ALJ, and the Secretary fully complied with the relevant law and regulations in handling Hall's case. The record demonstrates that AFMC made numerous and considerable efforts to point out situations which could result in a violation of Hall's obligations. Furthermore, the record contains the norms, criteria and standards which the Appeals Council found were properly developed and disseminated by AFMC pursuant to the statute and regulations. The district court found substantial evidence to support this finding by the Appeals Council, and we agree.

■ We next consider Hall's contention that the ALJ was required to consult a medical advisor to assist him in his deliberations. We do not believe that the regulations support Hall's position. Hall relies on 42 C.F.R. § 473.4, which refers to the use of a medical advisor in appeals by beneficiaries and "providers," (i.e., hospitals, skilled nursing facilities, and home health agencies, *see* 42 U.S.C. § 1395x(u)) in the case of a denial of payment. The Secretary suggests that 42 C.F.R. § 474 *et seq.,* which deals with imposition of sanctions, makes no reference to a requirement for a medical advisor, and therefore one is not required. After a careful review of the relevant regulations, we agree. Moreover, even if we believed that there was some ambiguity, we would defer to the Secre-

---

**6.** In *Heckler v. Day,* 467 U.S. at 111, 104 S.Ct. at 2253, the Court noted that the Secretary did not challenge the determination that section 405(b) requires administrative hearings to be held within a reasonable time.

tary's interpretation of the regulation. *See Bowen v. Yuckert,* — U.S. ——, 107 S.Ct. 2287, 2295 n. 8, 96 L.Ed.2d 119 (1987); *State of Missouri v. Bowen,* 813 F.2d 864, 868 (8th Cir.1987).

■ Finally, Hall argues that there was insufficient evidence in the record to support the Secretary's decision. Our role on review is to determine whether the Secretary's decision that Hall had violated his medical obligations is supported by substantial evidence. 42 U.S.C. § 405(g); *Turpin v. Bowen,* 813 F.2d 165, 169 (8th Cir. 1987); *Brand v. Secretary of Health, Education and Welfare,* 623 F.2d 523, 527 (8th Cir.1980). Substantial evidence is more than a "mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Review of the Secretary's decision must also take into account whatever evidence fairly detracts from its weight. *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986) (citing *Brand,* 623 F.2d at 527). Although there may be conflicting evidence in the record, this court's review of the final administrative decision is limited to deciding whether it is supported by substantial evidence. *Wilson*

*v. Schweiker,* 681 F.2d 526, 527 (8th Cir. 1982).

■ We are convinced, as was the district court, that there is substantial evidence in the record to support a finding that there were a number of cases presented for review which reflected violations of one or more of the statutory obligations found in section 1160 of the Social Security Act. We find that, on the whole, the record supports the finding that Hall failed to comply with section 1160 by performing unnecessary surgery, prescribing inappropriate or inadequate medication, and poorly documenting the necessity of various medical procedures.

■ We have carefully reviewed Hall's other contentions and find them to be without merit. Accordingly, the order[7] of the district court affirming the decision of the Secretary is affirmed.

---

7. We note that the district court did not set forth the final judgment in a separate document, distinct from its memorandum opinion and order affirming the Secretary's decision, as required by Fed.R.Civ.P. 58. We wish to restress Judge Bowman's admonition to the district judges on this issue:

> Rule 58 states that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Although the "separate-document" requirement in Rule 58 is not jurisdictional and may be waived by the parties, *see Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), we previously have stressed to the district judges that the rule is mandatory and is more than a mere formality in that it plays an important role in making a judgment "final" for purposes of determining when the time for filing post-judgment motions or notice of appeal starts to run. *See*

*Composite Technology, Inc. v. Underwriters at Lloyd's,* 762 F.2d 708, 709–10 n. 3 (8th Cir. 1985); *see also* Fed.R.Civ.P. 58 advisory committee note, 1963 amendment.
*Moore v. Warwick Public School Dist. No. 29,* 794 F.2d 322, 323 n. 1 (8th Cir.1986).
Here, the separate-document requirement was clearly waived, *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), since neither party raised the question of noncompliance with Rule 58; an entry of the district court's order was recorded in the clerk's docket; and the record indicates that the district court intended the memorandum opinion and order from which this appeal was taken to be its final decision. *Bankers Trust Co.,* 435 U.S. at 387, 98 S.Ct. at 1121; *see also Hughes v. Halifax County School Bd.,* 823 F.2d 832 (4th Cir.1987). Therefore, we may properly assume appellate jurisdiction under 28 U.S.C. § 1291. *See Moore v. Warwick Public School Dist. No. 29,* at 324 n. 1.