Alice ABKES, Mother of and o/b/o Anthony Abkes, a Minor Child, Plaintiffs,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. C 97–105 MJM.

United States District Court, N.D. Iowa, Cedar Rapids Division.

Nov. 18, 1998.

Vivian P. Meyer–Betts, Legal Services Corp. of Iowa, Waterloo, IA, for Plaintiffs.

Lawrence D. Kudej, U.S. Attorney's Office, Northern District of Iowa, Cedar Rapids, IA, for Defendant.

## ORDER

MELLOY, Chief Judge.

The matter before the court is the Report and Recommendation of Magistrate Judge John A. Jarvey, in which Judge Jarvey recommends that the decision of the Commissioner of Health and Human Services be affirmed. Judge Jarvey's Report and Recommendation was filed with the Clerk of Court on September 15, 1998. To date, no objection to the Report and Recommendation has been filed.

More than ten days have now elapsed since the filing of Magistrate Judge Jarvey's Report and Recommendation. Accordingly, pursuant to 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. 72(b), the Report and Recommendation of Magistrate Judge Jarvey is adopted.

IT IS THEREFORE ORDERED that Magistrate Judge Jarvey's Report and Recommendation is adopted. The decision of the Commissioner of Health and Human Services is affirmed, and plaintiff's complaint is dismissed.

## REPORT AND RECOMMENDATION

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to briefs on the merits submitted herein (Docket numbers 17, 20, 23). This matter was referred to the undersigned United States Magistrate Judge for the issuance of a report and recommendation. It is recommended that the final order of the Commissioner of Social Security denying child's insurance benefits to the plaintiff, Anthony Abkes be affirmed and the complaint in this matter dismissed.

### Procedural Background

On April 25, 1994, Alice Abkes (Alice) filed an application for survivor's child's insurance benefits on behalf of her son, Anthony Abkes (Anthony) pursuant to 42 U.S.C. § 402(d) on the earnings record of the deceased wage earner, Robin L. Warren (died 8/15/88). This claim was denied on June 23, 1994 because Anthony did not qualify as Warren's "child" under the provisions of the Social Security Act. On August 19, 1994, Alice requested that the unfavorable decision be reconsidered. The decision was reconsidered and it was again denied on November 25, 1994. On January 5, 1995, Alice requested a hearing by an Administrative Law Judge (ALJ). The hearing was held on October 20, 1995. On March 21, 1996 the ALJ denied benefits to Anthony, deciding that Anthony was not dependent upon Warren's and therefore not entitled to survivor's benefits. Alice requested a review by the Appeals Council and was denied such review on March 14, 1997, thereby making the decision of the ALJ the final decision of the Commissioner of Social Security in this case. On May 23, 1997 Alice filed a complaint in United States District Court Northern District of Iowa pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security.

Alice now claims that Anthony is eligible for surviving child's insurance benefits pursuant to 42 U.S.C. § 402(d) because paternity has been established by a court of competent jurisdiction under Iowa law and there is substantial evidence in the record to conclude that Anthony was a dependent child. Alice also claims that reliance on Iowa's intestacy statute, Iowa Code § 633.222, in determining dependency under 42 U.S.C. § 416(h)(2)(A) violates Anthony's rights under the Equal Protection clause of the Fourteenth Amendment.

### Factual Background

It is undisputed that Alice and Warren engaged in sexual intercourse around the middle of August, 1987 and Anthony was born approximately nine months later on May 10, 1988. However, Warren's ex-wife (Joni) and other members of Warren's family claim that Alice was having sexual relations with other men directly before and after the time she was intimate with Warren. Warren had no involvement with Alice's prenatal regimen other than possibly noticing that she was pregnant. He is not identified as the father on Anthony's birth certificate.

Shortly after Anthony was born, Alice informed Warren that he was the father.

Warren's response to this news is the subject of a factual dispute. Alice and her family claim that Warren was enthusiastic about being Anthony's father and assumed an active role in Anthony's rearing. Warren's ex-wife and his family claim that Warren continuously denied paternity and showed little, if any, interest in Anthony. It is undisputed that Alice and Warren did spend some time together after the birth of Anthony, but again the quality and quantity of these contacts is greatly disputed. Alice told officials at the Child Support Recovery Unit that Warren was Anthony's father, but Warren died only three months after Anthony's birth, giving the recovery unit insufficient time to undertake any investigation. Prior to Warren's death, Alice attempted to secure a blood sample, but was unsuccessful as Warren was in a medical condition that made it impossible for him to consent to the procedure. Blood samples were taken from Warren's family members and tested, but the results were inconclusive.

On February 22, 1993 Alice filed a paternity action in Iowa District Court, Hardin County. The judge was aware that paternity mattered only to the issue of Social Security benefits. The judge in that case decided that, even though nearly every fact regarding Alice, Warren, and Anthony's involvement was disputed and it was a very close case, paternity was established by a preponderance of the evidence.

*Scope of Review—Substantial Evidence*

The scope of a district court's review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides, in part, that:

[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...

42 U.S.C. § 405(g).

■ In order for the court to affirm the ALJ's findings of fact, those findings must be supported by substantial evidence appearing on the record as a whole. *See Locher v.*

*Sullivan,* 968 F.2d 725, 727 (8th Cir.1992); *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989). Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Cruse,* 867 F.2d at 1184; *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986). The court must take into account evidence which fairly detracts from the ALJ's findings. *Cruse,* 867 F.2d at 1184; *Hall v. Bowen,* 830 F.2d 906, 911 (8th Cir. 1987). Substantial evidence requires "something less than the weight of evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cruse,* 867 F.2d at 1184 (quoting *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)). The court must consider the weight of the evidence appearing in the record and apply a balancing test to contradictory evidence. *Gunnels v. Bowen,* 867 F.2d 1121, 1124 (8th Cir.1989); *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987).

### CONCLUSIONS OF LAW

A "child of a fully insured deceased individual" is entitled to social security benefits if the child:

(1) as filed an application for child's insurance benefits;

(2) is under age 18 and unmarried at the time of the application; and

(3) was dependent upon the insured individual at the time of the death of the insured individual.

42 U.S.C. § 402(d)(1).

■ In cases such as this where there is a dispute over whether a person is in fact the child of a fully insured deceased individual, there are four ways for that child to be determined to be the child of a fully insured individual. *First,* in the case of a deceased individual, if he acknowledged in writing that the applicant is his child or he had been decreed by a court to be the father of the applicant or had been ordered by a court to

contribute to the support of the applicant because the applicant was his son or daughter, then the child will be deemed to be the child of such insured individual. 42 U.S.C. § 416(h)(3)(C). However, such acknowledgment, court decree, or court order had to have been made before the death of the insured individual. *Id.* None of these things happened in the matter now before the court.

■ *Second,* the child will be deemed to be the child of the insured individual if the applicant can show that the insured individual was the father of the applicant and was living with or contributing to the support of the applicant at the time the insured individual died. Warren did not live with or contribute to the support of Anthony before he died.

■ *Third,* the applicant can be deemed to be the child of a fully insured parent if his parents subsequently marry. *Finally,* in determining whether an applicant is the child, the Secretary shall apply such law as would be applied in determining that devolution of intestate personal property by the courts of the state in which such insured individual is domiciled at the time such applicant files application. 42 U.S.C. § 416(h)(2)(A).

■ Once it is determined that the applicant is the child of a fully insured individual, the applicant must also prove that he was dependent on the fully insured individual at the time of his death. 42 U.S.C. § 402(d)(1). The child is deemed to be dependent upon the insured individual at the time of the individual's death unless at such time the individual was neither living with nor contributing to the support of the child and the child is neither the legitimate nor adopted child of the individual. 42 U.S.C. § 402(d)(3)(A).

■ A child deemed to be the child of a fully insured deceased individual by reason of his parents' subsequent marriage or the acknowledgment decree or support order pursuant to 42 U.S.C. § 416(h)(2)(B) or (h)(3)(C) shall be deemed to be legitimate and thus dependent on the fully insured deceased individual. Caselaw reveals that applicants who are determined to be the children of fully insured deceased individuals by reason of application of state intestate succession law are also deemed to be legitimate and thus

dependent on the fully insured deceased individual. *Mathews v. Lucas,* 427 U.S. 495, 499 n. 2, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976); *DeSonier v. Sullivan,* 906 F.2d 228, 232 (6th Cir.1990).

The problem for the applicant in this case is that he cannot be deemed to be the child of a fully insured deceased individual because his parents did not subsequently marry, the insured individual never acknowledged paternity in writing or had paternity decreed or support ordered while Warren was still alive. The state court finding of paternity therefore does him no good. As shown below, it does not assist him in proving his status as a child by reference to intestate succession law because a higher standard for proving paternity is required under those circumstances.

*Iowa Law of Intestate Succession*

■ Iowa Code § 633.222 provides in part:

> Unless the child has been adopted, a biological child inherits from the child's biological father if the evidence proving paternity is available during the father's lifetime, or if the child has been recognized by the father as his child; but the recognition must have been general and notorious, or in writing.

Proof of heirship of illegitimate children has been held to require clear and convincing evidence. *Estate of Evjen v. Novotny,* 448 N.W.2d 23, 24 (Iowa 1989). Not only must the child prove paternity, it must also be shown that the father "recognized" the child as his own. *Id.* In the context of heirship, the term "recognized" is interpreted to mean that the father admitted or acknowledged the paternity. *Id.* at 25. However, the recognition need not be universal or so general and public as to have been known by all. *Id.*

■ In March of 1994, the Iowa District Court for Hardin County did find, by a preponderance of the evidence, that Warren was Anthony's father. However, the court also noted that the record contained "serious conflicts on virtually every factual issue," making it "extremely difficult to decide Anthony's paternity." Members of Alice's family claimed that Warren had enthusiastically admitted paternity and was very active in An-

thony's life. Likewise, Warren's ex-wife and family members claimed that Warren had vehemently denied paternity and assumed no real role in Anthony's life whatsoever.

 The ALJ is not required to adopt the state court's finding of paternity since the Commissioner was not a party and therefore not bound by the decision. However, the Commissioner should accept the determination of the state court under the following circumstances:

1) an issue in a claim for social security benefits previously has been determined by a state court of competent jurisdiction; 2) this issue was genuinely contested before the state court by parties with opposing interests; 3) the issue falls within the general category of domestic relations law; and 4) the resolution of the state court is consistent with the law enunciated by the highest court in the state.

*Gray v. Richardson*, 474 F.2d 1370, 1372–3 (6th Cir.1973) (adopted by the Social Security Agency in SSR–83–37c). As previously noted, the Iowa District Court for Hardin County found the paternity action initiated by Alice to be an extremely close and difficult case, but ultimately decided that paternity had been proven by a preponderance of the evidence. This resolution is not consistent with the law enunciated by the Iowa Supreme Court. The state court determined the issue of paternity, which requires proof by a preponderance of the evidence only, and not heirship, which requires clear and convincing evidence. *See Estate of Evjen*, 448 N.W.2d at 24.

The state court noted that, except for the fact that Alice and Warren engaged in sexual intercourse, Warren had no further involvement in Anthony's prenatal care. Furthermore, Alice did not identify Warren as the father of her baby throughout her entire pregnancy or on Anthony's birth certificate. Warren had no indication that Alice claimed he was Anthony's father until shortly after Anthony's birth. Warren's reaction upon finding out that Alice claimed him to be Anthony's father is also disputed. Alice's family testified that Warren consistently ac-

knowledged his paternity of Anthony and displayed a great pride in his son. Warren's ex-wife and family, on the other hand, admit that Alice and Warren spent time together after Anthony's birth, but assert that these contacts did not involve Anthony. Furthermore, Warren's family claims that he consistently denied being Anthony's father and showed very little interest in the child. Alice did report Warren as Anthony's father to the Child Support Recovery Unit, but no meaningful investigation was undertaken due to Warren's untimely death.

Given the state court's indication that Alice narrowly carried her burden of proving paternity by a preponderance of the evidence, the ALJ's determination that she failed to meet her burden of proving heirship by clear and convincing evidence is supported by substantial evidence on the record as a whole.

### Denial of Equal Protection

 As noted above, an applicant must prove dependency before being entitled to recover children's insurance benefits under the Social Security Act. 42 U.S.C. § 402(d)(1). Unless adopted by some other person, a child who is either legitimate or would be entitled to inherit from the insured parent under the law of the state in which the insured parent was domiciled at the time of his death, is deemed dependent regardless of actual dependency. 42 U.S.C. §§ 402(d)(3), 416(h)(2)(A). However, even if a child did not qualify as an heir under the applicable state law, they are entitled to a presumption of dependency if: (1) before death the decedent had gone through a marriage ceremony with the other parent, which was subsequently deemed invalid due to a non-obvious defect; (2) the decedent had acknowledged in writing that the child was his; or (3) the decedent had, during his lifetime, been decreed by a court either to be the applicant's father or had been ordered to financially support the child. 42 U.S.C. § 416(h)(3)(C), 416(h)(2)(B). Otherwise, a child is considered dependent if he or she shows that the insured parent was living with him or was contributing to the child's support at the time of death. 42 U.S.C. § 416(h)(3)(C)(ii).[1]

---

1. The United States Supreme Court evaluated these statutory classifications and held that they do not impermissibly discriminate against those illegitimate children who are not statutorily deemed dependent. *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976)

It is undisputed that Anthony was not legitimated before Warren's death. Furthermore, Warren and Alice never went through any kind of marriage ceremony, Warren never acknowledged in writing that Anthony was his son, and during his lifetime Warren was never decreed by a court to be Anthony's father nor ordered to pay support for Anthony. Finally, Warren was not living with Anthony nor contributing to his support at the time of his death. Therefore, the only way Anthony can be deemed to be dependent and thereby eligible for children's insurance benefits is if Anthony can show that he would have been Warren's heir under Iowa's intestacy laws.

Under Iowa law, a child inherits from his biological father only if the evidence proving paternity is available during the father's lifetime, if the father had generally and notoriously recognized the child as his own, or if the father recognized the child as his own in writing. Iowa Code § 633.222. As previously noted, heirship in Iowa must be proven by clear and convincing evidence. *Evjen,* 448 N.W.2d at 24.

Alice argues that this statutory scheme violated Anthony's rights under the Equal Protection Clause of the Fourteenth Amendment because the requirement that paternity be established during Warren's lifetime imposes an insurmountable barrier based on illegitimacy as applied to Anthony given the fact that Warren died approximately three months after Anthony was born. To support this argument, she relies primarily on a case decided by the Eleventh Circuit Court of Appeals, *Daniels v. Sullivan,* 979 F.2d 1516 (11th Cir.1992). At issue in *Daniels* was the Georgia intestacy law which provided that:

> [a] child born out of wedlock may not inherit from or through his father or any paternal kin by reason of the paternal kinship unless, during the lifetime of the father and after the conception of the child, either (1) a court of competent jurisdiction has declared the child to be legitimate or has entered an order establishing paternity or (2) the father has signed the birth certificate or executed a signed, sworn statement attesting to paternity.

*Id.* at 1518. The court held that this statute, as applied in determining eligibility for survivors benefits for an illegitimate child who was less than two and one-half years old at the time his putative father was killed violated the child's right to equal protection of laws. *Id.* at 1520.

The United States Supreme Court held that a Tennessee statute imposing a two-year statute of limitations period on paternity and child support actions brought by certain illegitimate children (those not presently or liable to become public charges) denied those children equal protection as it did not provide them an adequate opportunity to obtain support. *Pickett v. Brown,* 462 U.S. 1, 1–2, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983). The Court relied on a previous decision in which it acknowledged the state's interest in preventing stale or fraudulent claims of paternity, but concluded that the ever-present proof problems surrounding paternity suits did not justify a limitations period which restricted support rights to the point of extinguishing them. *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (the lurking problems with respect to proof of paternity cannot be made into an impenetrable barrier that works to shield otherwise invidious discrimination). Furthermore, the Court has noted the many hardships working against single mothers in the first few years of their child's life which would make it impermissibly difficult to require them to also establish paternity during this period. *Mills v. Habluetzel,* 456 U.S. 91, 100, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982) (financial difficulties, loss of income attributable to the need to care for the child, continuing affection for the child's father, a desire to avoid family and community disapproval, and the emotional strain and confusion that often attends the birth of an illegitimate child, all may inhibit a mother from filing a paternity suit within two years after the child's birth).

The cases cited by the plaintiff are factually distinguishably. In *Daniels,* the intestacy law involved provided that an illegitimate child could not inherit from his father unless, during the father's lifetime, a court order declaring legitimacy or establishing paternity was entered, or if the father had executed a signed, sworn statement attesting to paternity. Since the father was obviously deceased at the time the mother applied for children's insurance benefits on behalf of her child,

there was no possible way this statute could have been satisfied. It did, based on his illegitimacy, create an "insurmountable barrier" to the child receiving the benefits accorded to children generally.

At issue in *Gomez* was the Texas common-law rule that illegitimate children, unlike legitimate children, have no legal right to support from their fathers. However, under the Social Security Act and the Iowa intestacy laws, illegitimate children do have a legal right to collect children's insurance benefits. Granted, illegitimate children are faced with more obstacles as far as proving dependency, but these are choices within the power of the state to make and are not in contravention of equal protection. *See Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) (upheld constitutionality of Louisiana intestate succession provisions which precluded illegitimate children, though duly acknowledged, from claiming rights of legitimate children and which permitted inheritance by illegitimate children, acknowledged by their fathers, to the exclusion only of the state).

In *Pickett*, the Tennessee statute which placed a two-year limitations on paternity and child support actions was determined to be unconstitutional. Again, this was an outright ban. No paternity or child support actions could be maintained two years after the child was born. There is no such denial under Iowa law.

The Iowa intestacy law, as applied, does not create an insurmountable barrier as applied to Anthony. Warren's untimely death did provide Alice with a limited time to gather the evidence necessary to establish paternity, but there was no impenetrable ban. Furthermore, despite these proof problems, Alice still could have proven that Warren generally and notoriously recognized Anthony to be his child. There were no insurmountable barriers to benefits that arose from application of Iowa's intestacy law. Rather, the only problem was meeting the burden of proof in light of the fact that Warren died.

2. Objections must specify the parts of the report and recommendation to which objections are made. Objections must also specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections.

Upon the foregoing,

IT IS RECOMMENDED that, unless any party files objections [2] to the Report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(C) and *Fed.R.Civ.P.* 72(b) within ten (10) days of the service of a copy of this report and recommendation, the Commissioner of Health and Human Services' decision be affirmed, and plaintiff's complaint be dismissed.

September 15, 1998.

*See Fed.R.Civ.P.* 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir.1990).