# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2968

_____

State of Missouri, ex rel. Jeremiah    *
W. ("Jay") Nixon, Attorney General    *
of Missouri,    *
     *   Appeal from the United States
       Appellant,    *   District Court for the
     *   Eastern District of Missouri
     v.    *
     *
Prudential Health Care Plan, Inc.,    *   [TO BE PUBLISHED]
Community Plan,    *
     *
       Appellee.    *

_____

Submitted: April 9, 2001
Filed: August 8, 2001

_____

Before HANSEN and BYE, Circuit Judges, and MELLOY,[1] District Judge.

_____

BYE, Circuit Judge.

     The State of Missouri filed two actions against Prudential Health Care Plan, Inc., pertaining to a single contract dispute. The State appeals the district court's[2] ruling

_____

[1]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa, sitting by designation.

[2]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

dismissing the first of those actions because of a defective complaint, Fed. R. Civ. P. 12(b)(6). We dismiss the State's appeal for two reasons. First, the State's appeal is wholly duplicative of its pending second action. The federal courts strongly oppose such duplication for it promotes wasteful use of scarce judicial resources. Second, the State seeks review of an isolated question whose disposition would not impact the ultimate resolution of this action. The State challenges an interlocutory ruling denying remand to state court, but not the Rule 12(b)(6) dismissal which terminated the action in Prudential's favor. As we explain below, we decline to exercise our jurisdiction to review the State's appeal.

I

The Missouri Department of Social Services contracts with health maintenance organizations (HMOs) to provide health insurance to qualified Medicaid recipients. In June 1997, Prudential, an HMO, contracted with the State to provide Medicaid coverage. Federal law requires Medicaid providers to screen a percentage of young children for lead poisoning at regular intervals, so the parties incorporated federal lead-testing regulations as terms in Prudential's contract along with various other federal requirements.

Some time after Prudential began providing Medicaid services under the contract, the Missouri Patient Care Review Foundation audited Prudential's compliance with federal law. The Foundation's review allegedly revealed that Prudential was failing to provide adequate lead poisoning testing for enrolled children. It concluded that Prudential had failed to test the proper percentage of infants for lead poisoning as required by its contract with the State.

On November 30, 1999, the State sued Prudential in state court for violating its obligation to test infants for lead poisoning at the rates prescribed by the contract. The

State's complaint stated two separate breach of contract claims as well as a fraud claim.

Prudential promptly removed the action to federal district court. The State then moved to remand the action to state court. The State argued that removal had been improper because its complaint raised no issues of federal law and the parties were non-diverse. The State acknowledged that the parties' contract incorporated federal law in its express terms. But the State argued that the language of federal law was part and parcel of the contract, and therefore subject only to state-law contractual interpretation doctrines. Prudential opposed remand on the ground that the State's complaint implicated a federal question. According to Prudential, the district court would necessarily resort to interpreting federal regulations to assess whether the contract's terms had been breached. The district court ultimately agreed with Prudential and denied the State's motion to remand.

Prudential then moved to dismiss the State's complaint under Fed. R. Civ. P. 12(b)(6) for failure to state cognizable claims. The district court granted the motion on June 28, 2000. The court held that the State's contract claims were pleaded insufficiently because the State had failed to allege, as a condition precedent required by the parties' contract, that it had notified Prudential of its breach before filing suit. The court also dismissed the fraud claim because the State had not pleaded the facts substantiating fraud with the particularity demanded by Fed. R. Civ. P. 9(b). The court dismissed the State's complaint without prejudice, but did not enter a judgment in accord with Fed. R. Civ. P. 58.

The State immediately appealed from the district court's order dismissing its complaint. The State did not challenge the court's basis for dismissal—the pleading defects identified in the court's order. The State challenged only the district court's refusal to remand its action to state court.

In addition to filing an appeal, the State formally notified Prudential of its purported breach of contract, as suggested by the district court's dismissal order. The State then filed a new action, with a new complaint, in state court on July 26, 2000. The new complaint ameliorated the apparent defects in the initial complaint. And then history repeated itself. Prudential removed the second action to federal district court, where the matter is stayed awaiting our decision in the appeal from the first action. Both the State and Prudential have described the second action as "substantially identical" to the first action.

II

A party may generally appeal from an adverse final decision of a district court. 28 U.S.C. § 1291. We have consistently held that a district court's dismissal without prejudice is one such "final decision." See, e.g., Kolocotronis v. Holcomb, 925 F.2d 278, 280 (8th Cir. 1991); Tatum v. State of Iowa, 822 F.2d 808, 809 (8th Cir. 1987) (per curiam). In addition, we have held that an order dismissing a complaint without leave to amend is presumptively final. Quartana v. Utterback, 789 F.2d 1297, 1299-1300 (8th Cir. 1986). The district court's June 28, 2000 order dismissed the State's first action without prejudice, and without leave to amend. Thus, under our settled precedent, the district court's order formed a proper basis for the State's appeal.

We note in passing that the district court did not issue a separate Rule 58 judgment, yet an appeal may only be taken from a judgment set forth on a separate document. See Fed. R. Civ. P. 58; Fed. R. App. P. 4(a)(1)(A). The defect is not fatal in this case. The Supreme Court has held that an appellant's failure to obtain a separate judgment from the district court may be waived if the appellee does not object, and if the district court's order actually disposes of all issues in the action. Bankers Trust Co. v. Mallis, 435 U.S. 381, 387-88 (1978) (per curiam). Prudential has waived any objection to the lack of a Rule 58 judgment, and the district court resolved the entirety of the issues presented for its consideration, so the absence of a Rule 58 judgment does

not preclude our consideration of the State's appeal.  See Hall v. Bowen, 830 F.2d 906, 911 n.7 (8th Cir. 1987) (applying Bankers Trust).  We have jurisdiction to consider this appeal.

## III

The existence of jurisdiction usually compels its exercise.  The Supreme Court has noted a "virtually unflagging obligation" on the part of federal courts to exercise their jurisdiction.  Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).  Hence federal courts need rarely grapple with the propriety of exercising their jurisdiction.  In the ordinary case, a federal court moves immediately to consider the merits of a controversy once its jurisdiction is determined.

Federal courts have nevertheless recognized several prudential limits upon the exercise of the jurisdiction bestowed by Congress.  The present controversy between the State and Prudential embodies one such limitation: the principle that federal courts may decline to exercise their jurisdiction in order to prevent duplicative litigation. Although we have concluded that the State's appeal falls within our jurisdiction, we believe that this appeal presents an exceptional case in which we should decline to exercise that jurisdiction.

## A

Concerns of federalism and efficiency undergird the few limitations on the exercise of extant jurisdiction.  These limitations invariably arise when parties undertake litigation in multiple fora.  Because litigation ensues in more than one venue, a federal court's decision not to exercise its jurisdiction does not deprive the parties of a forum in which to air their grievances.  The parties may resolve their differences elsewhere.

The best-known prudential limits on the exercise of jurisdiction are the abstention doctrines. These doctrines permit (and sometimes require) federal courts to decline their jurisdiction in favor of certain parallel state proceedings. See R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941) (permitting abstention in a case presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law); Burford v. Sun Oil Co., 319 U.S. 315 (1943) (permitting abstention when the exercise of federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern); Younger v. Harris, 401 U.S. 37 (1971) (requiring abstention—in most instances—when federal jurisdiction is invoked to restrain state criminal proceedings).

The abstention doctrines offer limited guidance for present purposes because they operate when state and federal proceedings are concurrent. In contrast, the case at hand entails concurrent federal cases. But the abstention doctrines do point our analysis in the proper direction.

The abstention doctrines are cousins to an additional prudential limitation on the exercise of federal jurisdiction. The Supreme Court has identified a general policy that duplicative litigation in *federal* courts should be avoided. See Colorado River, 424 U.S. at 817. In Colorado River, the Court held that in truly exceptional circumstances, a federal court could dismiss a properly-filed action in favor of concurrent, identical state-court litigation. Id. at 818-20. By its own terms, Colorado River applies only to concurrent state and federal litigation. But the Court's opinion discussed concurrent federal litigation as well. The Court carefully contrasted its holding—that federal courts could in rare cases abstain in deference to highly similar state litigation—to circumstances involving concurrent federal cases.

Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings

-6-

concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation.

Id. at 817 (internal citations and quotations omitted); cf. Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84 (1952) (permitting a district court to stay a declaratory judgment action in the District of Delaware in favor of an underlying patent infringement action in the Northern District of Illinois to avoid duplicative litigation).

Three circuits have amplified the general policy against concurrent federal litigation expressed in Colorado River. These circuits have explained that a district court may, "for reasons of wise judicial administration," dismiss one of two identical, pending actions. Serlin v. Arthur Andersen & Co., 3 F.3d 221, 223 (7th Cir. 1993) (quotation omitted); Zerilli v. Evening News Ass'n, 628 F.2d 217, 222 (D.C. Cir. 1980); Walton v. Eaton Corp., 563 F.2d 66, 70 (3d Cir. 1977) (en banc) (A plaintiff has "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (citations omitted).

Our own cases have not treated the precise scenario in which a plaintiff attempts to maintain two actions against the same defendant in the same court. Yet we have cautioned against similar attempts at duplicative litigation. For example, we have affirmed a district court's dismissal of one action when an apparently identical, second action was filed in the United States District Court for the Southern District of Florida. Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 418-19 (8th Cir. 1999).

Drawing upon Colorado River and the circuit decisions we have described above, we discern a prudential limitation on the exercise of federal jurisdiction. Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time. See Colorado River, 424 U.S. at 817 ("the general principle is to avoid duplicative litigation") (citations omitted). We join with other

circuits in voicing opposition to duplicative federal litigation, and we now apply this principle to the State's appeal.

B

The State's appeal concerns one of two apparently identical actions against Prudential, and is therefore duplicative. The dispute between the State and Prudential is analogous to Serlin, Zerilli, and Walton in all material respects. The sole difference between those cases and the present case is the identity of the federal forum. In Serlin, Zerilli, and Walton, a single district court faced two identical actions. In our case, however, one action pends before the court of appeals while the other pends in the district court. This distinction does not preclude application of the anti-duplicative-litigation principle here because there are economic and jurisprudential reasons to apply the policy against duplicative litigation both to district-district duplication and district-circuit duplication.

The policy against duplicative litigation is motivated largely by economic concerns. It makes little sense to proscribe district-district duplication but not district-circuit duplication, as both forms of duplication require the unnecessary expenditure of scarce federal judicial resources. Any form of duplication requires the federal judicial system (broadly speaking) to adjudicate two actions when one action will resolve the parties' controversy. Moreover, in some cases, district-circuit duplication will be reincarnated as district-district duplication at a later stage of litigation. If a circuit court reversed a district court decision and remanded for further proceedings, the district court would then face the remanded action as well as the other pending action—precisely the predicament encountered in Serlin, Zerilli, and Walton. District-district duplication and district-circuit duplication are so closely related that the federal policy opposing the former practice ought properly to oppose the latter.

In addition to the economic rationale advanced above, jurisprudential concerns ground the federal policy opposing duplicative litigation. District-circuit duplication requires a circuit court to consider unnecessary issues when the action pending in district court would resolve the parties' dispute to their mutual satisfaction. Even if the district court action does not lead the parties to a mutually agreeable resolution, the happenstance of subsequent settlement talks, strategic developments, and financial concerns may obviate the need for an appeal. For this reason, federal appellate courts resist deciding issues that may be mooted by subsequent events. Cf. City of Fort Madison v. Emerald Lady, 990 F.2d 1086, 1089 n.7 (8th Cir. 1993) (refusing to address an issue that "would be rendered academic" in light of subsequent proceedings in the district court because of "the waste of judicial and party resources" thereby entailed); see also Fogie v. Thorn Americas, Inc., 95 F.3d 645, 649 (8th Cir. 1996) (preferring a single appeal that develops the full panoply of issues to piecemeal appellate litigation); 15A Charles Alan Wright et al., Federal Practice & Procedure § 3907 (2d ed. 1992) (a single appeal "serves the more abstract interest of avoiding unnecessary appellate lawmaking."). Thus the wiser course, and the one we pursue here, is to await an appeal in the second action, rather than deciding the (potentially unnecessary) remand question posed in the State's appeal from the first action. Cf. Fort v. Roadway Express, Inc., 746 F.2d 744, 747-48 (11th Cir. 1984) (dismissing an appeal for lack of jurisdiction on these grounds).

IV

Concerns of duplication aside, the State's appeal suffers from an additional infirmity. The State effectively seeks an advisory ruling by requesting relief that would have no application to the action presented for our consideration.

The State has not appealed the dismissal of its complaint for the reasons identified in the district court's June 28, 2000 order. The State's failure to contest the basis for that dismissal, coupled with the State's subsequent conduct, evinces a

reluctant acknowledgment that its complaint in the first action was defective. The State did not simply regurgitate its first complaint when it filed a second action. The State notified Prudential of its alleged breach and apparently fixed the alleged defects that inhered in the complaint in the first action. At oral argument, the State essentially conceded that it had no interest in litigating the dispute against Prudential under the first complaint. Rather, the State hoped to obtain a favorable ruling on the remand question in the context of the first action so that ruling could be applied to the pending second action.

We acknowledge the possibility, perhaps even the probability, that our review of the remand question in this appeal from the first action could be applied to the second action. But we are reluctant to decide a question that the State admits has no bearing on the disposition of the first action. Only the first action is presented for our review in this appeal. By electing not to appeal from the Rule 12(b)(6) dismissal of the first action, the State is bound by that ruling. Thus our review of the interlocutory remand question would have no effect upon the ultimate disposition of the case before us. See Erwin Chemerinsky, Federal Jurisdiction 53 (3d ed. 1999) ("[A] federal court decision is purely advisory if it has no effect.").

The State also urges us to resolve the remand issue it has briefed because of the great importance it places on proceeding in its own court system. We recognize that the State will not have the benefit of litigating this controversy on its own turf. But the State may present the remand issue for our review at the culmination of its second action, if the State does not prevail in the district court. We are unmoved by the State's desire for more expeditious review because plaintiffs are routinely denied immediate review of the denial of remand. See 16 Moore's Federal Practice § 107.44[1][a] (3d ed. 2000) (explaining that an order denying remand of a removed case is *not* independently appealable); cf. Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1240 n.2 (8th Cir. 1995) (implying the same). Our ruling will not deprive the State of appellate review of this issue. If the State files its remand motion in the *second* action and it is

denied, and if the State loses on the merits in its *second* action, the State may then appeal the district court's refusal to remand to state court.

* * * * *

Our decision not to decide this appeal rests upon the important principle that a plaintiff may not simultaneously litigate two federal actions against the same defendant involving the same controversy. We believe that the economic and jurisprudential grounds for this decision trump the State's desire for immediate review of the district court's decision not to remand its initial action to state court.

As a practical matter, our decision illustrates that a plaintiff whose action is dismissed without prejudice by a district court faces an election. A plaintiff may stand on his complaint and appeal its dismissal to the court of appeals. Alternatively, a plaintiff may file a new action correcting the deficiencies in the first action. But a plaintiff may not select *both* courses of action, for that approach begets the type of duplicative litigation that we reject in this case.

We therefore dismiss the State's appeal.

HANSEN, Circuit Judge, concurring specially.

I join the court's opinion with respect to Parts I and II, and I concur in those portions of Part IV that address the issue of an advisory ruling, upon which, in my view, this case turns. I also concur in the court's judgment. "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues." Doe v. LaFleur, 179 F.3d 613, 615 (8th Cir. 1999) (internal quotations omitted). Here, the State acknowledges that resolution of the issue of remand has no effect because no further action can be taken in the case

before us. As the court's opinion points out, the State does not contest the district court's Rule 12(b) dismissal.

> [A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (internal quotations omitted). Therefore, I agree that we should decline to issue an advisory opinion with respect to how the district court should handle an expected similar, future remand motion which may be filed in the follow-up case now pending in the district court. However, I respectfully decline to join Part III because, in my view, that part is unnecessary for our court's holding.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-12-